STATE, Respondent, v. MATEO ARREGUI, Appellant.

[254 Pac. 788.]

CRIMINAL LAW—EVIDENCE WRONGFULLY OBTAINED—MOTION TO SUPPRESS
—VALIDITY OF WARRANT AND SEARCH—CONSTITUTIONAL LAW—EN-
FORCEMENT OF CONSTITUTIONAL PROVISIONS—INTOXICATING LIQUORS
— SEARCHES AND SEIZURES — LAW APPLICABLE — AFFIDAVIT FOR
SEARCH-WARRANT — SUFFICIENCY — VIOLATION OF CONSTITUTIONAL
RIGHTS—DUTY OF STATE COURTS—MOTION TO QUASH INFORMATION
—GROUNDS—INCLUSION OF CERTAIN GROUNDS IN STATUTE—EFFECT.

1. Validity of warrant and search, under Const. U. S. Amend.
4, and Const. Idaho, art. 1, sec. 17, may properly be tested by
motion to suppress evidence at the trial, since, in view of
C. S., sec. 2637, and sec. 9456, subd. 6, no independent action
could be maintained to secure fruits of illegal search and seiz-
ure, and refusal to permit motion to suppress evidence would
operate to deny raising question of violation of constitutional
rights.

2. Law and court-made rules of expediency must not be
placed above the constitution.

3. C. S., sec. 2637, providing for search and seizure under
state prohibition laws, *held* applicable to search made under
authority of purported federal search-warrant, where evidence
seized thereunder was turned over to state officers.

4. Affidavit by federal prohibition agent for search-warrant
to effect that he had been informed that liquor was sold on
certain premises, and that he knew defendant had reputation of
dealing in liquor, *held* insufficient, under Const. U. S. Amend. 4,
and Const. Idaho, art. 1, sec. 17, and admission of evidence
secured thereunder constituted a violation of Const. U. S.
Amend. 5 and Const. Idaho, art. 1, sec. 13.

5. Search-warrant, issued on information and belief, unsup-
ported by facts submitted to magistrate, and based on conclu-
sions of affiant rather than facts, is illegal, and search con-
ducted thereunder is unlawful and in violation of constitutional
provisions with relation to searches and seizures.

6. A charge in affidavit for search-warrant is not supported
by affidavit unless it is supported by evidence.

7. Liquor search-warrant must be supported by facts suffi-
cient upon which to find reasonable cause to believe that de-
fendant is violating the law by possession or sale.

8. Facts to support a search-warrant need not be sufficient upon which to base a verdict of the jury, but they must be sufficient on which to find probable cause for issuance of warrant.

9. Affidavits for search-warrant which go no further than to allege conclusions of law or of fact are insufficient.

10. State court has not only the power but the duty to prevent the violation of the rights of a citizen by federal authorities in violation of state and federal constitutions.

11. Under C. S., sec. 8863, made applicable to an information under sec. 8812, court properly denied motion to quash information based on ground that evidence was obtained in an unlawful search under void search-warrant.

12. Inclusion of certain grounds of motion to quash information in statute excludes consideration of any other.

Publisher's Note.

1. Recovery of property wrongfully seized by public authorities and held for use as evidence in a criminal trial, see notes in 11 A. L. R. 681; 13 A. L. R. 1168. Constitutional guaranty against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquor, see notes in 39 A. L. R. 811; 27 A. L. R. 709; 13 A. L. R. 1316; 3 A. L. R. 1514. See, also, 10 R. C. L. 933.

5. Sufficiency of showing of probable cause for search for intoxicating liquors, see notes in 3 A. L. R. 1517; 13 A. L. R. 1318; 24 A. L. R. 742; 39 A. L. R. 835; 41 A. L. R. 1539. See, also, 24 R. C. L. 708.

9. See 24 R. C. L. 707.

See Constitutional Law, 12 C. J., sec. 158, p. 743; n. 82 New.

Criminal Law, 16 C. J., sec. 110, p. 571, n. 79, 80, 84, 92; sec. 2149, p. 850, n. 52, 54.

Indictment and Information, 31 C. J., sec. 385, p. 808, n. 93; sec. 392, p. 814, n. 11 New.

Intoxicating Liquors, 33 C. J., sec. 360, p. 667, n. 29 New; sec. 371, p. 675, n. 2; sec. 379, p. 681, n. 88.

Probable Cause, 32 Cyc., p. 402, n. 18.

Process, 32 Cyc., p. 422, n. 5.

Searches and Seizures, 35 Cyc., p. 1266, n. 13.

States, 36 Cyc., p. 832, n. 43 New.

Writ, 40 Cyc., p. 2868, n. 56.

APPEAL from the District Court of the Third Judicial District, for Ada County.   Hon. Clinton H. Hartson, Judge.

Defendant appeals from the judgment of conviction of the unlawful possession of intoxicating liquor.   *Reversed.*

Reddoch & Hunter, for Appellant.

A search-warrant issued upon an affidavit, based upon information and belief, should disclose the source and nature of the information, or the informants' affidavits should be taken by the magistrate before issuing the warrant, and a warrant issued without these necessary requisites is invalid, and a search and seizure thereunder unreasonable and unwarranted.   (4th and 5th Amendments to U. S. Const.; Const. of Idaho, art. 1, secs. 13, 17; sec. 25, tit. 2, Nat. Prohibition Act, 41 St. at Large, 315; 4 U. S. Comp. St. 1923, Ann. Supp., sec. 10138½m; sec. 3, Espionage Act, 40 St. at Large, 228, 2 U. S. Comp. St. 1919, Ann. Supp., secs. 10496¼c, 10496¼d, 10496¼e; C. S., secs. 2637, 9321, 9322; 9323; *Schencks v. United States,* 55 App. D. C. 84, 2 Fed. (2d) 185; *People v. Elias,* 316 Ill. 376, 147 N. E. 472; *Abraham v. Commonwealth,* 202 Ky. 491, 260 S. W. 18; *State v. District Court,* 70 Mont. 202, 224 Pac. 866; *State v. Lock,* 302 Mo. 400, 259 S. W. 116; *State v. Smith* (Mo. App.), 262 S. W. 65; *Gore v. State* (Okl. Cr.), 218 Pac. 545; *Foster v. State* (Okl. Cr.), 226 Pac. 602; *Craven v. State,* 148 Tenn. 517, 256 S. W. 431; *State v. Baltes,* 183 Wis. 545, 198 N. W. 282; *Davis v. State,* 187 Wis. 115, 203 N. W. 760; *State v. Peterson,* 27 Wyo. 185, 13 A. L. R. 1284, 194 Pac. 342.)

The usual test for determining the sufficiency of an affidavit to authorize the issuance of a search-warrant is whether it contains statements which would authorize the prosecution of the affiant for perjury, if any material statement therein is false.   This cannot be done, where the affidavit is made upon information and belief, unless it discloses the source and nature of the affiant's information.   (*United States v. Keleher* (D. C. App.), 2 Fed. (2d) 934; *People v.*

*Elias,* 316 Ill. 376, 147 N. E. 472; *People v. Prall,* 314 Ill. 518, 145 N. E. 610; *Goode v. Commonwealth,* 199 Ky. 755, 252 S. W. 105; *State v. Quartier,* 114 Or. 657, 236 Pac. 746.)

Where evidence is obtained by means of an unlawful search and seizure and the same is used as the basis of a criminal charge against the owner, upon timely application by him, the court will order the articles so seized returned, or it will issue its order suppressing the same as evidence, and if it should refuse to do so, and admit such articles and information so obtained against him, over his objection, such action constitutes reversible error. (*Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. ed. 746; *Weeks v. United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834; *Amos v. United States,* 255 U. S. 313, 41 Sup. Ct. 266, 65 L. ed. 654; *Agnello v. United States,* 269 U. S. 20, 46 Sup. Ct. 4, 70 L. ed. 145; *Giles v. United States,* 284 Fed. 208; *State v. Sheridan,* 121 Iowa, 164, 96 N. W. 730; *Batts v. State,* 194 Ind. 609, 144 N. E. 23; *Youman v. Commonwealth,* 189 Ky. 152, 13 A. L. R. 1303, 224 S. W. 860; *Poston v. Commonwealth,* 201 Ky. 187, 256 S. W. 25; *Simmons v. Commonwealth,* 203 Ky. 621, 262 S. W. 972; *People v. Marxhausen,* 204 Mich. 559, 3 A. L. R. 1055, 171 N. W. 557; *Owens v. State,* 133 Miss. 753, 98 So. 233; *State v. Gardner,* 74 Mont. 377, 240 Pac. 984; *State v. Owens,* 302 Mo. 348, 32 A. L. R. 383, 259 S. W. 100; *State v. Warfield,* 184 Wis. 56, 198 N. W. 854; *State v. Wills,* 91 W. Va. 659, 24 A. L. R. 1398, 114 S. E. 261; *State v. Anderson,* 31 Ida. 514, 174 Pac. 124; *State v. Myers,* 36 Ida. 396, 211 Pac. 440; *State v. McLennan,* 40 Ida. 286, 231 Pac. 718; *State v. Dawson,* 40 Ida. 495, 235 Pac. 326; *State v. West,* 42 Ida. 214, 245 Pac. 85.)

Where intoxicating liquor or evidence of the defendant's possession thereof has been secured through an unlawful search and seizure, neither the liquor so seized nor the evidence of the possession thereof is admissible against him in a prosecution for the alleged offense. (*Amos v. United*

*States*, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. ed. 654; *Callender v. State* (Ind.), 136 N. E. 10; *State v. Rowley* (Iowa), 187 N. W. 7; *Youman v. Commonwealth, supra;* *Ash v. Commonwealth*, 193 Ky. 452, 236 S. W. 1032; *People v. Foreman*, 218 Mich. 591, 188 N. W. 375; *Tucker v. State*, 128 Miss. 211, 24 A. L. R. 1377, 90 So. 845; *Gore v. State* (Okl. Cr.), 218 Pac. 545; *Town of Blacksburg v. Beam*, 104 S. C. 146, 88 S. E. 441, L. R. A. 1916E, 714; *Hughes v. State*, 145 Tenn. 544, 238 S. W. 588; *State v. Gibbons*, 118 Wash. 171, 203 Pac. 390.)

A. H. Conner, Attorney General, John W. Cramer and Bartlett Sinclair, Assistant Attorneys General, for Respondent.

The search-warrant was legally issued on a proper affidavit by a United States prohibition agent disclosing the source and nature of the information, upon probable cause, stating the time (a recent date), naming defendant and describing the property and place to be searched, and therefore not an unreasonable search and seizure. (Sec. 3, Espionage Act, 40 St. at Large, 228, 2 U. S. Comp. Stat. 1919, Ann. Supp., sec. 10496¼c; sec. 3, National Prohibition Act, Oct. 28, 1919, 41 St. at Large, 305, art. 18, sec. 2, U. S. Const.; 4 U. S. Comp. Stat., art. 1, sec. 17; Const. of Idaho, art. 2; C. S., tit. 22; *United States v. Lepper*, 288 Fed. 136; *Goode v. Commonwealth*, 199 Ky. 755, 252 S. W. 105; *Blackburn v. Commonwealth*, 202 Ky. 751, 261 S. W. 277; *Sutton v. United States*, 289 Fed. 488; *Lipschutz v. Quigley*, 287 Fed. 395; *Yopp v. Commonwealth*, 202 Ky. 716, 261 S. W. 251; *State v. Rice*, 73 Mont. 272, 235 Pac. 716; *State v. Quartier*, 114 Or. 657, 236 Pac. 746; *United States v. McGuire*, 300 Fed. 98; *United States v. Vatune*, 292 Fed. 497; *State v. Chuchola* (Del.), 120 Atl. 212; *Loeb v. State*, 133 Miss. 883, 98 So. 449; *Commonwealth v. Tibbetts*, 157 Mass. 519, 32 N. E. 910; *State v. Lyman*, 22 Ida. 387, 125 Pac. 1042.)

Evidence, if competent and relevant, is admissible irrespective of the manner in which it was obtained. (*Commonwealth v. Tibbetts, supra; State v. Myers*, 36 Ida. 396,

211 Pac. 440; *Adams v. New York,* 192 U. S. 585, 24 Sup. Ct. 372, 48 L. ed. 575; *Chastang v. State,* 83 Ala. 29, 3 So. 304; *State v. Anderson,* 31 Ida. 514, 174 Pac. 124; *People v. Mayen,* 188 Cal. 237, 24 A. L. R. 1383, 205 Pac. 435; *State v. Johnson,* 116 Kan. 58, 226 Pac. 245; *State v. Aime,* 62 Utah, 476, 32 A. L. R. 375, 220 Pac. 704; *City of Sioux Falls v. Walser,* 45 S. D. 417, 187 N. W. 821; *People v. Castree,* 311 Ill. 392, 32 A. L. R. 357, 143 N. E. 112; *Welchck v. State,* 93 Tex. Cr. 271, 247 S. W. 524; McFadden, Prohibition Law & Practice, par. 154, subd. 3; *Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019; *United States v. Vatune, supra; State v. Reynolds,* 101 Conn. 224, 125 Atl. 636; 4 Wigmore on Evidence, sec. 2185; *United States v. Snyder,* 278 Fed. 650; 1 Greenleaf on Evidence, sec. 254.)

Guaranty against unreasonable search and seizure provided in the fourth amendment refers only to conduct of federal officers and not to state officers. (*State v. Owens,* 302 Mo. 348, 32 A. L. R. 383, 259 S. W. 100; *State v. Tonn,* 195 Iowa, 94, 191 N. W. 530; *McGrew v. United States,* 281 Fed. 809; *Miles v. State* (Okl.), 236 Pac. 57; *Wiggin v. State,* 28 Wyo. 480, 206 Pac. 373.)

Upon lawful arrest the right of search and seizure follows, with or without warrant. (*United States v. Hilsinger,* 284 Fed. 585; *Carroll v. United States,* 267 U. S. 132, 45 Sup. Ct. 280, 69 L. ed. 543; *Weeks v. United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834; *Miles v. State, supra; State v. McDaniel,* 115 Or. 187, 231 Pac. 965, 237 Pac. 373.)

TAYLOR, J.—Appellant was convicted of the unlawful possession of intoxicating liquor. Based upon the ground in each instance that the evidence against him, both exhibits and the witnesses' knowledge of facts, was obtained by an unlawful search under a void search-warrant, the defendant moved to quash the information, after a plea of not guilty, filed a motion to suppress the evidence, and at the trial objected to its introduction, and thereafter moved that it be

*stricken.* He assigns as error the adverse ruling in each instance.

Appellant contends that the search-warrant was illegally issued, and the search and seizure unlawful and in violation of the 4th amendment to the constitution of the United States, and sec. 17, art. 1, of the constitution of the state of Idaho, and that reception of the evidence was in violation of the 5th amendment to the constitution of the United States, and sec. 13, art. 1, of the constitution of the state of Idaho.

[1] We are first met with the contention of the state that the validity of the warrant and search cannot be contested as attempted herein, and that even though defendant's constitutional rights were violated, the evidence was properly received. The provisions of the 4th amendment to the federal constitution, and of sec. 17, art. 1, of the constitution of Idaho, invoked herein, are nearly identical. The 4th amendment reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Sec. 17, art. 1, of the constitution of Idaho, is as follows:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized."

The provision of the 5th amendment to the federal constitution is identical with that of the portion of sec. 13, art. 1, of the state constitution, invoked herein, that—

"No person shall be . . . . compelled in any criminal case to be a witness against himself . . . . "

*State v. Anderson,* 31 Ida. 514, 174 Pac. 124, until the decision in *State v. Myers,* 36 Ida. 396, 211 Pac. 440, was authority for the rule that—

"Evidence otherwise competent and relevant to the issue is not rendered inadmissible by reason of its having been disclosed by an unlawful search or obtained by unlawful seizure. In 1 Greenleaf on Evidence, 15th ed., section 254 (a), it is said: 'It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, there is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.' "

The author of *State v. Myers* devoted great attention to, and relied upon, *People v. Mayen,* 188 Cal. 237, 24 A. L. R. 1383, 205 Pac. 435, and declared himself in full accord with that decision, and disapproved the doctrine of *Weeks v. United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834. One justice concurred with the author. The case being one which could be decided as a case of lawful search after arrest, and having sought its justification by a decision upon both principles, a majority of the court concurred in the following language of Justice McCarthy:

"I concur in the affirmance of the judgment. As to the principal question involved, I agree with that part of the opinion which holds that the search and seizure resulting in the state's obtaining and introducing in evidence state's Exhibit 4 were not unreasonable or unlawful under Const., art. 1, sec. 17, but were reasonable and lawful as incidental to a lawful arrest. I do not concur in that part of the opinion which approves the doctrine of *People v. Mayen,* 188 Cal. 237, 24 A. L. R. 1383, 205 Pac. 435, and disapproves the doctrine of *Weeks v. United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834.

"Justices Dunn and Lee authorize me to state that they join in this concurring opinion."

This repudiation by a majority of the court of the reasoning of the Mayen case, and of that portion of the Myers decision based upon it, leaves the Anderson case no longer authority for the rule announced, or that the court will not, when the matter is presented in timely manner, "form an issue to determine" the question. (See *State v. Dawson,* 40 Ida. 495, 235 Pac. 326.)

If anything further were needed to demonstrate that the Anderson case proceeded upon a principle no longer tenable in this court, a consideration of the authorities cited in its support, as later considered in the jurisdictions from which they were taken, or by other authorities, justifies us in not reverting to the rule there announced.

That decision relied upon and cited the following authorities: *Legatt v. Tollervey,* 14 East, 302, 104 Eng. Reprint, 617; *Jordan v. Lewis,* 14 East, 306, 104 Eng. Reprint, 618; *Commonwealth v. Dana,* 2 Met. (Mass.) 329; *Gindrat v. People,* 138 Ill. 103, 27 N. E. 1085; *State v. Fuller,* 34 Mont. 12, 9 Ann. Cas. 648, 85 Pac. 369, 8 L. R. A., N. S., 762; *People v. Campbell,* 160 Mich. 108, 136 Am. St. 417, 125 N. W. 42, 34 L. R. A., N. S., 58; *Commonwealth v. Tibbetts,* 157 Mass. 519, 32 N. E. 910; *Commonwealth v. Tucker,* 189 Mass. 457, 76 N. E. 127, 7 L. R. A., N. S., 1056. Those cases either were not then or have been since distinguished, as not authority for the receipt of evidence over timely objection, based upon its having been obtained in violation of and "subversive of some constitutional or legal right." That *Gindrat v. People, supra,* was such a case is made plain by the decisions of that court in *Siebert v. People,* 143 Ill. 571, 32 N. E. 431, and in *People v. Castree,* 311 Ill. 392, 32 A. L. R. 357, 143 N. E. 112, which says of the Gindrat case:

"The last clause is important and is vital to the question now under consideration, for to receive the evidence in this case would be subversive of the plaintiff in error's constitutional right to be secure in his person, houses, papers, and effects against unreasonable searches and seizures. In the

Gindrat Case it was not so, for the person who obtained the evidence there was only a private detective acting under a private employment having no official authority, and it was held, in accordance with the universal holding of the federal courts in similar cases, that section 6 of article 2 of our Constitution is a limitation on the powers of the state government and has nothing to do with the unauthorized acts of private individuals having no authority or color of authority from the state."

*State v. Fuller, supra,* is no longer authority for refusal to frame an issue upon timely objection to evidence obtained under a search in violation of constitutional rights; that court, in *State v. District Court,* 70 Mont. 202, 224 Pac. 866, saying: "The admission in evidence of that testimony (timely application to suppress it having been made) would be reversible error."

See *State v. Gardner,* 74 Mont. 377, 240 Pac. 984.

Nor is *People v. Campbell, supra,* any longer such authority. It must be confined to the limits that the issue cannot be first presented on the offer of the evidence in the trial. The later Michigan decisions are authority for the rule that if the defendant moves before the trial to suppress the evidence, and is denied redress, then the validity of the search-warrant is a proper subject of renewed inquiry at the trial, as bearing upon the admissibility of the evidence seized. (*People v. Perrin,* 223 Mich. 132, 193 N. W. 888; *People v. Marxhausen,* 204 Mich. 559, 3 A. L. R. 1505, 171 N. W. 557.) The latter decision, citing with approval from 10 R. C. L. 933, that the remedy of defendant is found in the making of a timely application to the court, quotes as follows:

"On such an application, the question of the illegality of the seizure may be fully heard, and if the court erroneously refuses to order a return of the papers, and thereafter receives them in evidence against the applicant over his objection, it is an error for which a judgment of conviction must be reversed."

The English and Massachusetts cases cited in *State v. Anderson* are so clearly distinguished in *State v. Wills,* 91 W. Va. 659, 24 A. L. R. 1398; 114 S. E. 261, that we quote at length therefrom. In *Commonwealth v. Dana,* 2 Met. (Mass.) 329, the Massachusetts court was considering evidence held to have been seized under a lawful search-warrant, yet went out of its way to set forth, as pure *dicta,* the rule relied upon by *State v. Anderson,* and cited in their support, as does the Anderson case, the two English cases of *Legatt v. Tollervey,* 14 East, 302, 104 Eng. Reprint, 617, and *Jordan v. Lewis,* 14 East, 306, 104 Eng. Reprint, 618. The West Virginia court points out that the English cases are not strictly applicable; that they involved admission in a civil case of copies of papers secured in violation of court orders. Of those decisions and the Massachusetts cases it says:

"Such are the cases that seem to have been the foundation of the broad and general rule that the admissibility of evidence is not affected by the illegality of the means by which the evidence is obtained. . . . . There is no similarity in the method of procuring the evidence in those cases, and that of an officer procuring evidence by an unlawful search and seizure.

"The government was not attempting, in those cases, to make use of the copies of the indictments. The controversies were between private individuals. There was not involved any question of unlawful search and seizure, and yet these two cases seem to have furnished the basis of many American decisions which practically nullify a most vital constitutional provision. As we see it, they started the Massachusetts court on the wrong path, and needlessly so, for its statement, above quoted, is wholly *obiter.* Other courts followed suit, and many apparently without much consideration; many without making any distinction whether the search and seizure were legal or illegal, whether search followed a legal or illegal arrest; and many, without necessity for the decision in the particular case, have stated the broad rule without qualification, and then, when the par-

ticular question has arisen, have held themselves bound by the prior *dicta.* We do not feel that we are so bound.''

Speaking of cases reaching the opposite conclusion, that court says:

''We do not regard them as sound, and refuse to follow them. They ignore in a large measure the objects and purposes of these great constitutional guaranties, by giving them a narrow construction, when they should receive a liberal construction. If we err, we would rather err on the side of liberty, and therefore adopt as the better rule that laid down by the Supreme Court of the United States.''

In view of the subsequent decisions of the supreme court of the United States and federal courts, and of other eminently respectable authority in state jurisdictions in accord therewith upon the point involved, we cannot give much weight to *State v. Turner* (1910), 82 Kan. 787, 136 Am. St. 129, 109 Pac. 654, 32 L. R. A., N. S., 772, relied upon in *State v. Anderson,* which Kansas case cites for its authority and relies upon the contrary rule of an author even so eminent as Wigmore, who terms *Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. ed. 746, as a case in which ''the seeds of a dangerous heresy were sown,'' and later says (5 Wigmore on Evidence, sec. 2264):

''That case, however, . . . . in later federal opinions, has in effect been pared down, and for practical purposes repudiated (in respect to the *obiter* statements, in the majority opinion, above noted).''

*State v. Turner* further relies upon *State v. Fuller,* 34 Mont. 12, 9 Ann. Cas. 648, 85 Pac. 369, 8 L. R. A., N. S., 762, since distinguished by the Montana court in many cases. We cannot subscribe to the doctrine of *State v. Turner,* no matter by how many authorities it is cited or approved, in the statement therein found, in so far as applicable to official action, which seems to have been so often relied upon without thoughtful consideration, to the effect that—

''The courts do not approve a resort to illegal means to obtain evidence. They are not indifferent to a violation of the letter or spirit of the law designed for the protection of

one accused of crime. But a far-reaching miscarriage of justice would result if the public were to be denied the right to use convincing evidence of a defendant's guilt because it had been brought to light through the excessive zeal of an individual, whether an officer or not, whose misconduct must be deemed his own act and not that of the state.''

Kansas has adhered to the rule announced in *State v. Turner,* but upon grounds not appealing to us, *stare decisis* and approval of *People v. Mayen, supra.* (See *State v. Johnson,* 116 Kan. 58, 226 Pac. 245.)

There is no need of our reciting herein the results of tracing to original sources the constitutional guaranties invoked, the reasons for their adoption, the ills and evils sought to be avoided, the rights protected or guaranteed. This has been sufficiently recited by decisions showing in themselves the fruits of careful consideration of such sources. An analysis of the reasons given for and against the contentions of the state confirms us in our conclusion.

With the exception of citation of authorities subsequent to the decision of *Gouled v. United States,* 255 U. S. 298, 41 Sup. Ct. 261, 65 L. ed. 647, decided in February, 1921, in the language of that decision,—

''It would not be possible to add to the emphasis with which the framers of our Constitution and this court . . . . have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two Amendments. The effect of the decisions cited is: that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen,—the right to trial by jury, to the writ of *habeas corpus,* and to due process of law. It has been repeatedly decided that these Amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual deprecia-

tion' of the rights secured by them, by imperceptible practice of courts, or by well-intentioned but mistakenly overzealous executive officers.''

The moving principles announced in that decision have so frequently been realleged and reaffirmed that a mere citation of some of the more prominent and best considered cases since its pronouncement will suffice.

The same reasoning in *Byars v. United States,* 273 U. S. 28, 47 Sup. Ct. 248, 71 L. ed. 520 (decided January 3, 1927), which prevents the use in a federal prosecution of evidence obtained in a search under an illegal state search-warrant, participated in by a federal officer, precludes the use, under our state constitution, in a state prosecution, of evidence secured in a search under an illegal federal warrant participated in by a state officer, and confirms us in following the reasons given by the decisions of so many of the state courts of last resort, which may be found summarized and assigned in *Tucker v. State,* 128 Miss. 211, 24 A. L. R. 1377, 90 So. 845; *State v. Wills,* 91 W. Va. 659, 24 A. L. R. 1398, 114 S. E. 261; *Gore v. State* (Okl. Cr.), 218 Pac. 545.

In *State v. Owens,* 302 Mo. 348, 32 A. L. R. 383, 259 S. W. 100, the court said:

''In considering the weight of authority more effect should be given to the United States court than to the courts of any state, and perhaps than to the courts of all the states; not merely because the United States Supreme Court is the highest authority, but for other reasons: The federal rule is the result of years of mature consideration, during which the question at issue was before the federal courts under varying circumstances of fact, so that it has been tested and applied to nearly all conceivable conditions. Section 11, art. 2, of our Constitution is almost identical in language and exactly identical in purport with Amendment No. 4 to the federal Constitution. The construction of that section by the federal courts is, therefore, of the highest authority.''

If any further reasons were necessary to be assigned for our following the decisions of the United States supreme

court upon the questions involved herein, the decision in *Gore v. State, supra,* sets forth in language upon which we would not attempt to improve the reasons for doing so:

"The guaranties of immunity from unreasonable searches and seizures, and that an accused shall not be compelled to give incriminating evidence against himself, contained in the federal Constitution, and in our state Constitution, are practically the same. Therefore, if it appears that the highest court of the land has definitely fixed a rule applying to the introduction of evidence obtained by illegal seizure, it follows without argument that the rule of evidence in the state courts, where like facts and principles of law are involved, should conform to that settled by the court having supreme prestige and authority."

[2] Law and court-made rules of expediency must not be placed above the constitution. If violation of constitutional rights or law is to be condoned, excused, palliated, overlooked, or if a violation cannot be proven except by a violation, is it not possible to weigh the various provisions of our constitution, and fix them in relative importance, above those of any law? Is it not much more necessary that those amendments to the federal constitution which we have come to ascribe to wisdom equal with that of those who drafted the original constitution, approaching the inspired or immortal, and the same principles adopted in state constitutions, should be enforced rather than any statute law?

A continued disregard of the rights guaranteed under the 4th and 5th amendments, and the principles thereof incorporated in state constitutions, heads us directly to revolution against their usurpation, if history tells us correctly that violation of the rights sought to be protected thereby was one of the chief moving reasons for the Revolution. If, one by one, the rights guaranteed by the federal constitution, can and must, for expediency's sake, be violated, abolished, stricken from that immortal document, and from state constitutions, we will find ourselves governed by expediency, not laws or constitutions, and the revolution will have come.

I can see no such expediency or necessity for the enforcement of any law, as to justify violation of constitutional rights to accomplish it. The shock to the sensibilities of the average citizen when his government violates a constitutional right of another is far more evil in its effect than the escape of any criminal through the courts' observance of those rights. As said in *Gouled v. United States, supra*, "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right"; and any rule which does so is not founded upon reason or justice.

Speaking of those courts which admit such evidence on the ground "that the court should not be called upon to stop the course of the trial to inquire into the manner in which otherwise competent evidence has been secured by the state; to do so, they say, introduces into the case a collateral issue," *State v. Wills, supra*, says:

"We think this ground is untenable. It is not unusual, but, on the contrary, common practice, to stop the course of the trial and exclude the jury, while the court hears the testimony to determine whether it is competent. The jury returns, and the evidence, if competent, is heard by it; if incompetent, it is excluded. An instance familiar to every lawyer is where the state attempts to introduce a confession which the accused avers was obtained by duress or other unlawful means. It is done in numerous other instances, and it makes no difference whether the case be criminal or civil. The practice in no sense introduces a collateral issue."

See, also, *Tucker v. State, supra*.

[3] In C. S., sec. 2637, we find the general statutory provisions for search and seizure under the state prohibition laws. While, in the present instance, the search was primarily under authority of a purported federal search-warrant, the provisions of that section could hardly be held applicable under a state search-warrant, and ignored because in this instance a federal warrant was used, and the evidence turned over to state officers. That section provides that "When the defendant has been held to answer to the dis-

trict court, such intoxicating liquors shall remain in the custody of the officer executing the warrant, pending the final determination of the case''; with further provision that ''Intoxicating liquors seized as hereinbefore provided, shall not be taken from the custody of the officer in whose possession they are by any writ of replevin or other process while the proceedings herein provided for are pending . . . .''

C. S., sec. 9456, subd. 6, provides:

''The word 'writ' signifies an order or precept in writing, issued in the name of the people, or of a court or judicial officer, and the word 'process,' a writ or summons issued in the course of judicial proceedings.''

If, then, one whose constitutional rights have been violated by an unlawful search or seizure can maintain no action, or if the fruits of an illegal search and seizure under the prohibition law cannot be taken from the custody of the officer by any writ of replevin or order or precept in writing issued in the name of the people, or of a court or judicial officer, or summons issued in the course of judicial proceedings, where else and by what procedure, other than in the immediate case being prosecuted, can the objection of a defendant be heard, or where can he apply for its suppression, or avail himself of his constitutional rights, or assert their violation?

It would be futile to say, in the face of C. S., sec. 2637, as said in the minority opinion in *State v. Myers, supra,* of such evidence:

''If a defendant is entitled to the possession of papers which have been illegally seized and are about to be used in evidence against him, he has his remedy in an independent proceeding.

''The conclusion necessarily follows that if the applications made by appellants for the return of the papers taken from the Myers' residence are to be considered at all, they must be regarded as relating to an independent proceeding, and the action of the court thereon cannot be reviewed on appeal in a criminal action.''

Giving C. S., sec. 2637, its literal interpretation, coupled with a rule that defendant cannot object to such evidence

at the trial, is tantamount to saying that he cannot anywhere raise the question of the violation of his constitutional rights.

[4]   The facts are: One O. K. Nickerson, a federal prohibition agent, made affidavit before a United States commissioner and procured a federal search-warrant, the material statements of which affidavit are as follows:

"That within certain rooms occupied by Mateo Arregui, and rooms under the management and control of the said Mateo Arregui, and not occupied by permanent roomers or lodgers, in what is known as the DeLamar Hotel located at No. 807 Grove Street, in the City of Boise, in the County of Ada, State of Idaho, and used and occupied by the said Mateo Arregui in part as a place for the sale of intoxicating liquors, there is certain property, to wit: Whiskey, wine, beer and other intoxicating liquors and property used in dispensing intoxicating liquors which is being used in the commission of a misdemeanor, to wit: a violation of the National Prohibition Act of the Statutes of the United States; that the facts upon which this affiant relies are as follows: That affiant has been informed by a reliable person that said person has seen whiskey sold in the rooms occupied by the said Mateo Arregui in the above described hotel at a recent date. That for reasons of public policy affiant does not wish to disclose the name of his informant.  That affiant knows of his own knowledge that the said Mateo Arregui has a reputation in the community in which he resides of being a person who deals in and sells intoxicating liquors."

There was no other or further evidence taken by the commissioner. Acting under the authority of this warrant, Nickerson, with four other federal prohibition agents and one Brown, a deputy sheriff of Ada county, searched appellant's premises, and all of the evidence offered, including four . bottles containing intoxicating liquors, was secured while acting thereunder, and taken over by the county. During the search, this deputy sheriff actively assisted, and in fact found some of the intoxicating liquors offered in evidence. The officers, or most of them, went to the place in the county automobile, and upon completion of the search

returned with the evidence and defendant in that car to the county jail.

While the position of the state is sought to be bolstered by an inference that the defendant was under lawful arrest, this is not supported by the record. The officers proceeded to search and seize the property, and acted wholly under the authority of the pretended search-warrant. While it is true that one witness testified that the defendant was arrested, he was not in this supported by evidence of the other witnesses, nor was he the person who pretended to make the arrest, if any. He merely makes the statement that the officer who secured the search-warrant arrested the defendant. All of the other evidence would refute this arrest, the witnesses going no further than to say that the defendant was under restraint. To attribute to the whole proceeding the nature of a search after a lawful arrest, in the face of the fact that each witness swears they searched under the warrant, and the fact that the officer made a return upon the warrant showing the results thereof, would be to dispute such return (*Davis v. State*, 187 Wis. 115, 203 N. W. 760), and "makes too severe a demand upon the imagination" (*Flagg v. United States* (C. C. A.), 233 Fed. 481).

[5] Under the great weight of authority of both state and federal courts, a search-warrant issued upon "information and belief," unsupported by facts submitted to the magistrate, and based upon the conclusions of the affiant rather than the facts, is illegal, and a search conducted thereunder is unlawful and in violation of the constitutional provisions with relation to searches and seizures. (*State v. District Court*, 70 Mont. 202, 224 Pac. 866; *Caudill v. Commonwealth*, 202 Ky. 730, 261 S. W. 253; *State v. Lock*, 302 Mo. 400, 259 S. W. 116; *People v. Elias*, 316 Ill. 376, 147 N. E. 472; *Davis v. State, supra; Byars v. United States, supra; Schencks v. United States*, 2 Fed. (2d) 185, 55 App. D. C. 84.)

[6] Some authorities require that facts be set forth competent for admission on a trial by jury (*People v. Elias, supra*); others, that the facts recited be so stated that the

affiant may be convicted of perjury if the statements are false (*Goode v. Commonwealth,* 199 Ky. 755, 252 S. W. 105). It could not be contended that any statement in this affidavit, other than, perhaps, that as to the reputation of defendant, is such that it would be considered competent evidence for a jury. A charge is not "supported by affidavit" unless it is supported by evidence. (*People v. Elias, supra.*)

The only statements which approach that of a "statement of fact" are: "That within certain rooms . . . . there is certain property, to wit: Whiskey, wine, beer and other intoxicating liquors and property used in dispensing intoxicating liquors"; and "That affiant knows of his own knowledge that the said Mateo Arregui has a reputation in the community in which he resides of being a person who deals in and sells intoxicating liquors." But the former is, first, not a statement of fact, but a conclusion, and is immediately negatived as a statement of fact, and branded as such a conclusion, by the statement "that the facts upon which this affiant relies are as follows: that affiant has been informed by a reliable person that said person has seen whiskey sold in the rooms occupied by the said Mateo Arregui in the above-described hotel at a recent date. That for reasons of public policy affiant does not wish to disclose the name of his informant. That affiant knows of his own knowledge that the said Mateo Arregui has a reputation in the community in which he resides of being a person who deals in and sells intoxicating liquors."

[7] The statement of the general reputation, if considered a statement of fact and competent for consideration before a jury, and even under the second rule, sufficient upon which to charge perjury if false, is not, standing alone, sufficient upon which to issue a search-warrant which needs for its support not alone a reputation of defendant as a violator of law, but facts sufficient upon which to find reasonable cause to believe that he is violating the law by possession or sale.

[8] Authorities differ as to what are statements of fact, and depend in each instance upon the recitals of the proof. It is sometimes difficult to distinguish between a statement of fact and a statement of conclusion of fact (*State v. Smith* (Okl. Cr.), 235 Pac. 273), but the conclusion must be drawn by the magistrate and not by the affiant. It is not necessary that the facts be sufficient upon which to base a verdict of a jury, but they must be sufficient upon which to find probable cause for the issuance of the warrant (that crime is being committed). But even if, as said in *United States v. McGuire* (D. C.), 300 Fed. 98, "The search warrant requires only 'probable cause'; conviction requires satisfaction 'beyond a reasonable doubt.' 'Beyond a reasonable doubt' must include 'probable cause.' But 'probable cause' does not include or measure up to satisfaction 'beyond a reasonable doubt.' They are widely different. 'Beyond a reasonable doubt' may be likened to the summit of a high mountain, and 'probable cause' to a halfway station on the mountain side," he who sits in judgment at the halfway station as to the existence of "probable cause" must be the magistrate, and not the affiant who must bear the burden of facts up the mountain to that station, rather than his conclusions. He cannot leave at the foot of the mountain his load of facts, and with lightened and easy steps recite at the halfway station his conclusions as to facts which he does not choose to carry so far. The affiant's eyes, ears and other senses and powers are the mere instruments for securing and conveying to the magistrate the facts which these senses have observed or recorded, and his mind is not the place for the conclusion to be reached, but the mind and brain of the magistrate must form and draw the conclusions from facts.

"It should have affirmatively appeared that he (affiant) had personal knowledge of facts competent for a jury to consider, and the facts, and not his conclusion from the facts, should have been before the commissioner." (*Giles v. United States* (C. C. A.), 284 Fed. 208.)

[9] Affidavits which go no further than to allege conclusions of law or of fact are insufficient. (*Schencks v. United States, supra; Abraham v. Commonwealth*, 202 Ky. 491, 260 S. W. 18; *Hannan v. State* (Okl. Cr.), 233 Pac. 249.) This affidavit was wholly insufficient upon which to issue the search-warrant, tested by the authority of either state or federal decisions. (*State v. Lock, supra.*)

In *Byars v. United States, supra*, in holding that an illegal search participated in by federal officers, under an invalid state warrant, rendered the evidence secured inadmissible in a federal court, and although not questioning the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account, the court said:

"But the rule is otherwise when the federal government itself, through its agents acting as such, participates in the wrongful search and seizure. To hold the contrary would be to disregard the plain spirit and purpose of the constitutional prohibitions intended to secure the people against unauthorized official action."

In *Burdeau v. McDowell*, 256 U. S. 465, 13 A. L. R. 1159, 41 Sup. Ct. 574, 65 L. ed. 1048, in holding that the evidence in question was not secured by "governmental agencies," the court said:

"The 4th Amendment gives protection against unlawful searches and seizures, and, as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the 4th Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued."

The supreme court of Wisconsin, having said in *Novak v. State*, 185 Wis. 616, 200 N. W. 369, that a seizure by federal officers did not render the evidence inadmissible in the state court, retracted this statement in further consideration of

the same case at 185 Wis. 618, 202 N. W. 336, and left the question an "open one." Of *Burdeau v. McDowell, supra,* the Wisconsin court said:

"Conceding the doctrine of *Burdeau v. McDowell, supra,* it does not quite reach the question here presented. The federal prohibition officers are not mere private citizens. While they are not officers of the state, they are officers of the federal government, and are prohibited from making unlawful searches and seizures by the fourth amendment of the federal Constitution."

The courts of Kentucky and Missouri, upon reasoning which to us appears sound, have rejected such evidence.

"But as the same act of a citizen of both a state and the United States renders him amenable to both sovereignties under which he must live, if each but protects him under similar guaranties of their respective Constitutions against unlawful activities of its own officers, it would result that state officials might search a citizen without a warrant, and the evidence thus unlawfully obtained be used against him in the federal courts, and he likewise would be without protection in the state courts against unreasonable searches by federal officers other than by an action for damages, which both the courts of this commonwealth and of the United States have held inadequate.

"Surely the same guaranties by the dual sovereignty mean more than that, and they should be so construed as more effectively to protect the citizens' immunities from governmental interference, which each within its sphere has declared sacred.

"To us it seems possible that this end may be attained only by holding, either that no prosecution in the state courts can be sustained by evidence obtained by federal officers acting under authority or color of office, or that such evidence will be incompetent unless obtained under a valid federal search warrant, as is the rule with reference to state officers." (*Walters v. Commonwealth,* 199 Ky. 182, 250 S. W. 839.)

See, also, *Vick v. Commonwealth,* 204 Ky. 513, 264 S. W. 1079; *Caudill v. Commonwealth, supra.*

"In this case the federal officer violated the constitutional rights of the defendant, and violated the constitutional restrictions upon his own behavior as a federal officer. Had the case been pending in the federal court, he could not have testified, because his act in procuring his information was unlawful. His case, however, is pending in the state court, and it is contended . . . . He can bring his misdemeanor to a state court, and there have his lawless disregard of his official duty appraised as a meritorious performance. . . . .

"The only safe and sound construction of the situation is to say that when a federal officer violates the constitutional restriction upon his conduct, so as to make evidence procured in such violation incompetent, that it is incompetent everywhere offered." (*State v. Rebasti,* 306 Mo. 336, 267 S. W. 858.)

The 4th and 5th amendments are held to be a restriction only upon federal authority; that a citizen's rights are protected thereby only against violation by federal authority. But those restrictions were placed there by the demand of the states (the people) to prohibit federal governmental violation of the rights of a citizen (of the states). The same provisions in the state constitution are restrictions upon the state and state authority.

It would be anomalous for a state court to say:

"The state demanded that the federal government and federal authority be thus restricted against the violation of the rights of a citizen of this state; yet if they do violate the constitution and violate the rights of our citizens, we will not enforce the observance of those provisions, but will effectuate the evil by recognition and judicial sanction of the fruits of such violation. And although there are the same restrictions in the state constitution, we will judically sanction the violation of your rights under the federal constitution, although to do so we must become a party to the violation of both constitutions."

[10] In the hands of the state courts is placed the power to prevent in part the violation of the rights of a citizen by federal authorities in violation of state and federal constitutions. This is not only in the power of the state court, but its duty. If, as said in the Burdeau case, the 4th amendment to the federal constitution "was intended as a restraint upon the activities of sovereign authority, . . . . governmental agencies," and in the Byars case, "the assurance against any revival of" the "misuse of power in the matter of searches and seizures," embodied in the 4th amendment, "is not to be impaired by judicial sanction of equivocal methods . . . . which, in reality, strike at the substance of the constitutional right," and as the same intention prompted the adoption of the provisions of our state constitution, "to secure the people against unauthorized official action," there seems no other logical conclusion than that unauthorized official action should not receive judicial sanction by receipt of evidence in a state court, although secured by federal officers, which, upon the same showing of facts, would be denied in a federal court, when to do so would be to violate the same right guaranteed by both the federal and state constitutions.

[11] The court did not err in denying the motion to quash the information. C. S., sec. 8863, made applicable to an information by C. S., sec. 8812, provides, as ground for quashing an information: "1. When it is not found, indorsed and presented as prescribed in this code."

[12] The inclusion of this and other grounds upon which appellant's motion does not rest excludes the consideration of any other. (*People v. Butler,* 1 Ida. 231.)

The courts of California, construing identical provisions, have, upon grounds which appear to us proper, held that a motion to set aside an information cannot be based upon the insufficiency of the evidence taken upon a preliminary examination. (*People v. Beach,* 122 Cal. 37, 54 Pac. 369; *People v. Sacramento Butchers' Protective Assn.,* 12 Cal. App. 471, 107 Pac. 712; *Ex parte Williams,* 52 Cal. App. 566, 199 Pac. 347.) This is in accord with the opinion in

*State v. Foell,* 37 Ida. 722, 217 Pac. 608, in which, however, there was only one outright concurrence and two concurrences in the result, which might cast some doubt in that case upon the point decided.

The motion of defendant to suppress the evidence was timely, and the court erred in denying it and in receiving the evidence at the trial after such timely motion. For this, the judgment must be reversed, and it is so ordered.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.

Budge, J., dissents.