## DEITZ v. CITY OF CENTRAL.

LEGISLATIVE POWER — *to create a city.* Under the organic act the legislative assembly has power to establish a municipal corporation.

LEGISLATIVE POWER — *to change the official title of a justice of the peace.* The legislative assembly has no power to confer upon a justice of the peace a denomination not warranted by the organic act, and, in so far as the charter of the City of Central confers upon the justice of the peace exercising jurisdiction under the ordinances thereof, the name of police magistrate, it is void.

JURISDICTION *of justice of the peace under ordinances of city.* But, notwithstanding the attempt of the legislative assembly to confer a wrong name upon him, the justice of the peace has jurisdiction of cases arising under the ordinances of the city.

ORDINANCES *of city — when reasonable.* Where authority was conferred upon a corporation to suppress and prohibit the sale of intoxicating drinks, as well as to license the same, an ordinance which imposes a penalty for selling such drinks without license, which penalty exceeds that fixed by the general law of the territory, is reasonable.

INTEREST OF MAGISTRATE *in result of suit — what will disqualify.* Where a citizen of a municipality is elected a justice of the peace, according to the charter, that he is, in virtue of his citizenship, entitled to share in the penalties adjudged against the accused, is no objection to his competency. In such case the provisions of the charter amount to an express declaration that interest shall not disqualify.

WAIVER OF OBJECTIONS — *on appeal from justice of the peace.* Section 46, chapter 50 of the Revised Statutes, 407, relating to proceedings in district court on appeal from justice of the peace, is applicable to cases arising under the ordinances of the city of Central.

Objection that summons was returnable on the day it was issued, cannot be made in district court.

Nor that the justice of the peace assumed a title not warranted by law.

Nor that the plaintiff's demand was not indorsed on the summons.

PRACTICE *in actions to recover penalty under city ordinances.* Where the charter of a city provides that to recover a penalty, fine or forfeiture, prescribed by ordinance, it shall be · sufficient to declare generally, in debt, it is not necessary to file a written declaration in the common-law form.

PRACTICE — *when to make objections.* Objections to the competency of witnesses must be made at the trial.

PLEADING AND PROOF — *as to time.* In an action to recover a penalty for selling intoxicating liquor without license, evidence may be introduced of sales made anterior to the earliest day named in the complaint.

EVIDENCE *of refusal of city officers to issue license.* In such action the defendant cannot show that the city clerk improperly refused to issue a license to him.

VERDICT — *in an action of debt to recover a penalty.* In such action a verdict of guilty is substantially responsive to the issue.

JUDGMENT — *when defendant may be imprisoned.* Where the charter provides that if the defendant has no property whereof the judgment can be collected, the defendant may be committed to jail, it is error to enter judgment that the defendant stand committed until the fine and costs are paid. In such case execution should be awarded, and if no property can be found the defendant may be committed to jail.

### Appeal from District Court, Gilpin County.

ACTION of debt upon an ordinance of the city of Central, which provides that if any person shall sell or give away any intoxicating or fermented liquors without license, in quantities less than one quart, without first obtaining a license therefor, he shall for each offense forfeit and pay to the city a sum of not less than $25, nor more than $50.

This ordinance is based upon section 20 of the charter of the city (3 Sess. 245), which is as follows: "To license, restrain, regulate, prohibit, and suppress tippling houses, gambling houses, bawdy houses, and other disorderly houses, and the selling and giving away of any intoxicating or malt liquors by any person within the city, except by persons duly licensed."

A general law of the territory authorized the county commissioners in each county to license the sale of intoxi-

cating liquors, and imposed a penalty of $20 for the viola-tion of its provisions.

Mr. Justice BELFORD dissented from so much of this opinion as affirms the lawful existence and powers of the person styling himself police judge, before whom these proceedings were instituted.

Mr. I. N. WILCOXEN and Mr. S. B. HAHN, for appellant.

Mr. L. C. ROCKWELL, for appellee.

WELLS, J. The errors assigned in this case question, first, the existence of the corporation which was plaintiff below; second, the reasonableness and validity of the ordinance under which the conviction was had; third, the existence and powers of the functionary before whom the process was instituted; fourth, the regularity of the pro-ceedings.

We have examined the multitude of questions urged in this case, with the careful consideration to which the elab-orate diligence of counsel entitles them.

As to the first question: It is solemnly argued that the legislature of this territory have no authority to create municipal corporations, for that congress, not having such power, could not confer it upon the legislature of the ter-ritory, which is its mere creature.

But upon what ground of reason can it be said that con-gress has not such authority?

Whether it be referred to an express constitutional grant or to necessity arising out of its sovereignty and pro-prietorship, we think it can scarcely, at this day, be doubted that the authority of congress to govern the territories is absolute and supreme.

It may be that the inhibition against laws prohibiting the free exercise of religion, or abridging the freedom of the press, against the taking of private property without com-pensation, and the other express restraints imposed by the constitution, extend as has been contended, *proprio vigore*, to the territories, but beyond these, the power of congress

to govern in the territories by such means and agencies as in its wisdom it may select, is indisputable.

They might themselves enact laws operating directly in the territory, or appoint a governor and judges invested with legislative powers, both of which were done in the north-west territory.

Or they might enact, that all authority, whatever, should be invested in such person or persons as the president might appoint; this was done in the case of Florida.

Or they might provide for a legislature to be appointed by the president, as was done, in the first instance, for the Territory of Louisiana.

Or they might, we conceive, organize each community in any or all of the territories into a municipality, with power of local self-government.

The whole of this authority, so far as concerns the local affairs of the citizens, and within the restrictions contained in the organic act, congress has conferred upon the legislative assembly of this territory, subject at all times to a revocation of the grant in its own pleasure, and subject, in its exercise, to a conformity with the constitution and the acts of congress, including the organic act.

Within these restrictions and limitations, and subject to the power of revocation in congress, the legislature of this territory may do whatever congress might do, if assuming to govern by its own enactments.

It is said, that, admitting the power of congress, the legislative authority of the territory rests upon other grounds; and being a mere delegated authority cannot, itself, be the subject of a delegation.

But the authority of every State legislature is also a derivative and delegated authority, and the maxim here relied upon has always, in a proper case, been held to avoid their enactments when in conflict with its principle; nevertheless it may safely be assumed, that in no State of the Union was there ever an express constitutional provision authorizing the erection of municipal corporations, nor probably is there any State in which the legislative au-

thority has not, from the earliest periods, assumed and exercised the power now brought in question. In no case to which we have been referred have the courts denied its existence ; and, on the contrary, in numerous cases and by the most respectable courts, it has been expressly affirmed.

And, if we shall now declare, that in this territory the power does not exist, it will be to destroy and prohibit within our borders all these local municipalities and miniature republics, which are the very womb and nursery of our free institutions.

The reasonableness of the ordinance under which appellant was prosecuted is denied, upon the ground that it imposes a penalty greater than that provided by the law of the territory.

But when we consider, that, by the express words of the statute, this corporation is authorized not only to license, but to suppress and prohibit the sale of intoxicating liquors, which the legislature has not attempted to do, how can it reasonably be said, that the general law is, in any respect, the measure of the powers of the corporation ? In no one of the cases relied upon by counsel has this been decided.

In *Austin* v. *Murray*, 16 Pick, 121, the by-law was held void because not warranted by the charter, while the amount of the penalty did not come in question.

In *Mayor of New York* v. *Nichols*, 4 Hill, 209, the ordinance in question prohibited any sale of hay without having the same inspected and weighed ; the court held it to be void as against the provisions of the general statute, which expressly provided that hay pressed and put up in a particular manner might be sold " by any standard weight which shall be agreed upon between the buyer and seller."

In *The City of Boston* v. *Shaw*, 1 Metc. 130, the only question was, whether the method prescribed by the ordinance for the apportionment of the expenses of sewerage among property owners was or was not a reasonable one.

In *Dunham* v. *Robertson*, 5 Cow. 462, the charter authorized the village to make such prudential by-laws as they may from time to time deem meet * * * relative to taverns,

gin shops and hucksters' shops in said village * * * provided, always, that such by-laws be not contrary to, or inconsistent with, the law of this State. The by-law provided that hucksters should be licensed, and that every person keeping a huckster's shop without license should pay a penalty named. The court held the ordinance void, as in restraint of a trade upon which no restriction was apparently necessary.

By-laws, the court say, must accord with the laws of the State and the general principles of law; and by this we understand that the by-law must not countervail any express provision of the statute or the recognized principles of common law; not that necessarily the corporation may not go further in legislating for their own members than the legislation of the State upon like subjects.

If we admit the rule contended for, we practically nullify a very large part of the provisions of this charter. Here is an express authority given to suppress tippling houses and to do many other things that no law of the territory has yet assumed to do, and if the penalty recovered in this case was unauthorized, then, for the same reason, every attempt of the corporation to exercise the numerous special powers contained in the charter relating to subjects, upon which the legislature has not prescribed a rule, must be forever ineffectual.

The cases of *City of Pekin* v. *Smelzel*, 21 Ill. 465; *City of Burlington* v. *Keller*, 17 Iowa, 369; S. C., 18 id., are directly in point, and, we think, directly against the position assumed by counsel for the appellant.

As to whether there is such an officer as the one before whom this prosecution was instituted, it will be observed that the officer subscribes himself in the process police magistrate. It is said that by the organic act of the territory no such officer is recognized, but that all judicial power is vested in the supreme court, district courts, probate courts and justices of the peace.

By the charter of this corporation it is provided that at the first election there shall be elected, among other officers,

"one justice of the peace, to be denominated police judge for the city of Central, * * * and on the first Monday of April, in every second year, one police judge," and in another section, that "the police judge shall have jurisdiction in all cases of violation of the city ordinances, and shall have the same jurisdiction in all civil and criminal proceedings as is now, or hereafter shall be, conferred upon other justices of the peace of this territory, and in all courts of this territory, said police magistrate shall be held to be a justice of the peace."

In other portions of the charter, as well as in the section just quoted, the officer is termed, as will be observed, indiscriminately, a police judge and police magistrate.

The majority of the court think that so much of the charter as confers or authorizes the power to assume a denomination not warranted by the organic act may well be held void; but, in determining whether the office exists or not, we are inclined to the opinion, that we ought to look rather to the substance of the powers conferred upon the incumbment, than to the name by which he is designated; guided by this principle, we have no difficulty in concluding that the officer designated by the charter police justice or police magistrate lawfully possessed the powers which he assumed in this proceeding.

Whether in the exercise of this power he is not required to act as, and assume to be, a justice of the peace, and to disregard the unwarranted title with which the legislature have invested him, is a question which, in the view we take of this case, it is not necessary for us to determine.

It is said, that the police judge, being entitled to participate in the penalties adjudged against the defendant, was interested in the event of the prosecution, and was therefore incompetent to give judgment, or issue process, or entertain the proceeding in any stage. The argument assumes (what is not shown in the record) that the magistrate was a citizen of this municipality, and this we think it is fair to assume, and perhaps the necessary conclusion from the fact of his incumbency in the office : for the charter clearly contem-

plates that all officials therein provided for should be elected by the qualified voters of the city from among their own number; but if we are correct in this, then the provisions which confer jurisdiction upon the police judge, in causes arising under the charter and ordinances, is equivalent to an express declaration that his interest in the penalties shall not disqualify.

The objections as to the existence and competency of the officer are thereupon overruled.

As to the manner of the proceedings it is objected that the summons was made returnable on the day of its issuance. If in this proceeding the justice was bound to observe the rule prescribed by the general-law, upon which we express no opinion, the judgment might for this reason have been set aside upon certiorari brought, or the defendant might have disregarded the judgment and brought his action against the justice if he issued execution thereon.

But, by appealing from the judgment of the justice, he has, we think, waived all irregularities in the process by which he was brought into that court.

The statute declares that no exception shall be taken to the form or service of the summons issued by the justice of the peace, nor to any of the proceedings before him, but the court shall hear and determine the cause in a summary way, without pleadings in writing, and nothing can be clearer, we think, than that the intention of the legislature was to require a trial upon the merits, without objections to any of the proceedings before the justice.

We do not feel called upon to reconcile with this statute what is said by the supreme court of Illinois. *County Commissioners, etc.* v. *Robertson,* 5 Gilm. 563; *Adams* v. *Miller,* 12 Ill. 27; *Walsen* v. *Nettleton,* 13 id. 62.

It is sufficient to say that the construction we have given the statute appears to us the true one, and we are supported by the later cases of *Swingley* v. *Haynes,* 22 Ill. 216, and *Ohio and Mississippi Railroad Company* v. *McCutchin,* 27 id. 9.

It is urged that the provisions of the justices' act were

intended to apply only to civil causes, and that this prosecution is a criminal one ; and the case of *Edwards* v. *Vandermarck*, 13 Ill. 633, is referred to ; but we are not prepared to admit that this is not a civil case in such sort that an appeal might not lie even though not allowed by the charter ; and by that section of the charter which allows the appeal, it is expressly declared that appeals "shall be granted in the same manner and with like effect as appeals are taken from and granted by justices of the peace, under the laws of this territory."

This disposes of the objection, that the process was signed with a title which the officer had no right to assume, and that no demand was indorsed thereon ; as to this latter the statute has been held to be directory merely, and a failure to comply with it immaterial. *Eaton* v. *Graham*, 11 Ill. 620.

As to the complaint, the charter provides that "it shall be lawful to declare generally in debt for such penalty, fine or forfeiture, stating the clause of this act, or the by-laws or ordinance, etc., and to give the special matter in evidence."

It is argued that under this provision the city attorney should be required to file a declaration, as in the common-law action of debt; but we think the statement, account or complaint which was filed in this cause, indefinite and informal as it is, must be regarded as a compliance with the intention of the legislature. We cannot believe that the legislature intended to introduce into a court not of record, and in this class of proceedings, which, in many instances, must be summary in their nature or else altogether ineffectual, the subtleties of the common-law action of debt, with the delays incident to it. Having reference to the subject-matter to which this legislation is applied, we think the language may well receive a construction less restricted than in another case we might be compelled to adopt.

As for the objection, that inhabitants of the city were permitted to testify on behalf of the prosecution, it is a

sufficient answer to say that no objection to their competency was made upon the trial.

It is further urged that the prosecution upon the trial were permitted to put in evidence of sales by the plaintiff, anterior to the earliest day named in the complaint. The cases from Massachusetts, which were cited in support of this objection, are not in accord with the authorities elsewhere, and we are not satisfied with the reasons upon which that court proceeds.

As for the objection that the absence of the license to the plaintiff was not established, we think that if the burden of proof, as to this, rested in the first instance upon the prosecution, upon which we express no opinion, sufficient was shown to devolve upon the defendant the duty of establishing the fact of his license, if he had one. It was proved that by the ordinance of the city, the city clerk was required to keep a register of all licenses issued by him ; that register was produced, and the clerk testified, as we understand him, though his testimony was conflicting, that no license had in fact been issued to the defendant for the period in which the alleged unlawful sales were made. The jury were the proper judges of the effect to be given to the whole testimony, and they have found that the defendant had no license.

On the trial the defendant offered to show that, before the sales charged, he had applied to the mayor for license to sell intoxicating liquors, and that his application was approved ; that thereupon he had made application to the clerk of the city to issue the license, and made tender in gold coin of the proper license fee, but that the clerk refused him such license.

This evidence, it is assigned for error, the court below excluded.

We think the ruling of the district court was correct.

If the clerk refused to issue the license where the defendant was entitled to it, the remedy was by mandamus to compel the clerk to perform his duty, or by action on the case for the wrongful refusal.

It cannot be said that this was the act or default of the corporation, for the clerk, if the agent of the corporation in any sense, was so only within the limit of his duty.  If he refused to issue the license, where he was bound by law to issue, it was of his own wrong, and the defendant must seek his remedy against him alone.

The verdict seems to us to be substantially responsive to the issue.  Although the proceeding is in form of an action of debt, the real question in issue was, whether the defendant had been guilty of a violation of the ordinance, and this issue is certainly settled by the verdict of guilty.  The only other finding which, upon any principle, could have been made, is the common-law verdict, in the action of debt, that "the defendant doth owe the said plaintiff the said sum of, etc., above demanded," but it cannot be said that there is any specific debt or sum certain sought or demanded in such prosecution as this: the fine to be imposed, which is the only thing recovered, might be greater or less within certain limits, and in the absence of any regulation by ordinance, it appears to us that the jury could have nothing to do with fixing the amount of this fine.

No such regulation is shown by the record, and we express no opinion as to its effect if it were shown.

The proceedings were, therefore, we think, sufficiently regular in these respects.

But in the entry of the judgment the court clearly erred.

The charter warrants a commitment of the accused in prosecutions of this sort only when he has no real or personal estate which can be taken to satisfy the judgment, and the district court in this case ordered that the defendant stand committed until the payment of the fine and costs, without reference to whether he had property liable to execution or not.

For this error the judgment will be reversed, and the cause remanded, with instructions to the district court to enter judgment upon the verdict, and to award execution thereon to the sheriff of Gilpin county, and to further order that in case estate of the defendant sufficient to satisfy the

judgment and costs be not found, execution issue against the body of the defendant, and that thereon the defendant be committed to the common jail.of Gilpin county, there to be confined, until at the rate of one day's confinement, for each dollar of the said fine and costs, the judgment be fully satisfied, such imprisonment not to exceed, however, the term of six months.

The judgment is reversed, with costs, in this court.

*Reversed.*