No. 15,160.

GREEN *v.* CITY AND COUNTY OF DENVER.
(142 P. [2d] 277)

Decided September 27, 1943.

Mr. F. W. HARDING, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. WAYNE D. WILLIAMS, RUTH S. HUNT, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

DEFENDANT, plaintiff in error, owner and operator of a grocery and meat market in Denver, was convicted in municipal court of the City and County of Denver for violating section 956, article 13, chapter 36 of the Municipal Code of Denver 1927, making it unlawful to "keep * * * or expose for sale * * * any unsound, stale, putrid or diseased meats." He was also was convicted of violating section 1116, article 19, chapter 36 of the Code by allowing meat and other perishable articles, "adapted or designed to be used for human food * * * to become putrid, decayed, poisoned, infected or in any other manner rendered or made unsafe or unwhole-some for human food."

On appeal to the county court the cases were con-solidated for trial and in a trial de novo had to a jury he again was convicted on both charges, and to review the judgment entered upon the verdicts he has sued out a writ of error asking that the writ be made a super-sedeas and operate accordingly. He has specified eighteen points, upon which he prays that the judgment be re-

versed. We have elected to dispose of the cause upon the supersedeas application.

The case grows out of an inspection of the store of defendant by two inspectors of the Denver Health Department in the exercise of their duties. Food which they inspected was on various display racks and in an L-shaped meat counter along one wall and across a part of the back of the store. Directly in the rear of the meat counter was a walk-in refrigerator, and back of that an empty room. The inspectors testified to finding "old, rancid and putrid liver," of foul odor, "darker, perhaps [with reference to color], and some mold on it" in the walk-in refrigerator. In the meat counter they found an open container of weiners, which one of them described as "broken sections, no whole weiners there, little broken sections and slimy in appearance, and I took them out of the counter and examined them, and found mold here and there, and in looking at the bottom, there was a very bad odor in the bunch." Also in the meat counter were several packages of cheese with the wrappings partly torn off. This cheese was "obviously molded and old and rancid." The inspectors found a loaf of bread "badly discolored, having mold all over the face of it." In another rack there was a container of stale candy. Between the meat counter and the walk-in refrigerator the inspectors found a barrel of pickled pigs feet which was swarming with tiny flies. One of the inspectors poured a bottle of clorox over the pickled pigs feet and instructed the owner to get rid of them. Some portions of the weiners, liver, bread, cheese and candy were taken to the laboratory of the Denver General Hospital, where later, on the same day, a laboratory examination was made of them by the technician of the laboratory, who found them to be unwholesome and unfit for human consumption. The report of the examination, introduced in evidence as plaintiff's Exhibit A, was as follows:

"Green's Market. Meat received in laboratory April

1, 1941 at 4:30 p.m. 13 lbs. weiners and 10 lbs. liver. The weiners were moldy, slimy and smelled badly. Some of them were broken and shriveled up. Under the microscope the mold appeared to be pennicillium and mucor. The mold itself could be readily seen with the naked eye.

"The liver was very dark and discolored with grayish spots. The odor was putrid. The chemical test on the liver showed putrefaction.

"There was one loaf of bread very badly molded.

"A package of oleomargarine smelled very rancid and was badly discolored.

"Several packages of cheese were moldy and discolored.

"This food is entirely unfit for human consumption.
K. Gorsuch
W. Schuler."

■ One of the points urged by defendant is based upon the alleged erroneous admission of this report in evidence, on the theory that the personal testimony of Gorsuch, the technician, under the best-evidence rule was the only competent evidence and should have been introduced if relied upon. Mrs. Gorsuch did, in fact, take the stand and her testimony in regard to her findings was the same as shown in the written report. The admission of the plaintiff's Exhibit A as evidence therefore, even assuming it to be error, would appear to be nonprejudicial, being merely a repetition of her testimony given from the witness stand.

■■ An examination of the record shows that the articles of food so examined and reported upon by the laboratory technician were kept in an icebox until exhibited as evidence in the hearing in municipal court, about 40 hours after they were taken from defendant's store. Just previous to the trial in municipal court these articles were photographed by using color film, and in the subsequent trial these color photographs were introduced in evidence. The testimony of the

photographer who made the photographs was that the first one introduced in evidence (Exhibit B) was taken from a film that was under-exposed and hence the color of the liver was shown as darker than in reality it was; that in the case of the other exhibits the photographs were accurate pictures of the objects photographed, even as to color. One error specified is that Exhibit B was admittedly inaccurate in respect to the color and was inadmissible in evidence. Because the photographer frankly explained to the jury that the film had been under-exposed and that the color therefore was not wholly accurate, we do not believe that prejudicial error resulted from the admission of this exhibit.

These photographs showed not merely the articles of which complaint was made by the inspectors but beside each offending article was placed a fresh piece of food of the same type, thus affording a comparison between the appearance of the fresh and stale foods. The defendant now claims for the first time that there is nothing in the testimony to show that the fresh weiners were of the same type as the stale weiners, or that the fresh liver was from the same kind of animal as the stale liver depicted in the photograph. These color photographs not being before us, we have no means of determining whether the pictures themselves are a sufficient answer to that objection. It would seem that the fact that particular objection was not made at the time of the trial indicated that a similar type of fresh food was used in each case in apposition to the stale food, of which complaint was made. The photographer, in answer to the question as to what articles are shown in the picture, answered: "Pan of liver handed to me by Mr. Dolph, *and a piece of fresh liver of the same type for comparison.*" (Italics ours). The objection would seem to be neither well taken nor, if good, made at the proper time.

Defendant argues that photographs in this case were

introduced, not as explanatory, but in lieu of the objects photographed; that their admission generally was therefore improper. In answer to this objection, the city cites *Parris v. Jaquith,* 70 Colo. 63, 197 Pac. 750, and *Reed v. Davidson Dairy Co.,* 97 Colo. 462, 50 P.(2d) 532. In the latter case we quoted with approval from (1 Wigmore on Evidence) section 792, as follows: "A photograph, like a map or diagram, is merely a witness' pictured expression of the data observed by him and therein communicated to the tribunal more accurately than by words. Its use for this purpose is sanctioned beyond question." Defendant points out that in the case of *Parris v. Jaquith, supra,* where we approved the admission in evidence of a photograph of what remained of a building after a fire, that there is a vast distinction between the charred remains of steel, wood and concrete, and perishable articles like food, such as is involved in the instant case. We belive, however, that the opinion in the Parris case is in point because there, as in the instant case, there was proof that the conditions shown in the photographs admitted in evidence were not materially changed—in the Parris case from the date of the fire, in the instant case from the date of the seizing of the food by the inspectors.

Defendant's counsel allege error in the giving of the court's instruction No. 9. That instruction contained the two basic standards to be applied in administering punishment: namely, punishment for the offender and deterrence of others. The city's counsel, in support of the instruction, cited 16 C.J., page 1351, section 3186; *People v. Gowasky,* 219 App. Div. 19, 219 N.Y.S. 373; *Wilborn v. Saunders,* 170 Va. 153, 195 S.E. 723. Defendant's counsel by implication admits the applicabilty of those authorities to a criminal case, but relies upon *Lloyd v. Canon City,* 46 Colo. 195, 103 Pac. 288, and *City of Greeley v. Hamman,* 12 Colo. 94, 20 Pac. 1, to show that the action in the instant case was not criminal in nature but, being for the violation of a city

ordinance, was in the nature of a civil suit. He then contends that the instruction which permitted the jury, in arriving at the amount of the fine, to have in mind the deterring of others as well as punishment for the offender is without the purview of a civil action and the giving of it constituted reversible error. Under the authority of the latter cases the instant case would appear to be a civil action, but we find in them no authority for counsel's contention that, where a municipal ordinance provides for a penalty, it is not proper that the jury be instructed as to both motives in determining the amount of the fine to be assessed for such offense, namely: 1. Punishment for the offender; and 2. the deterring of others. The court, by its instruction No. 4, recognized the civil nature of the procedure. Even though prosecution for the offense may be in the nature of a civil action, the imposing of a penalty under a municipal ordinance has the same purpose as the imposition of a penalty under the criminal law. We doubt that it is tenable to argue that, in assessing a fine under a municipal ordinance, the motives either of revenge or of increasing the revenues of the city treasury should be a factor. We believe a fine under a municipal ordinance may properly be considered to have as one of the objectives the deterring of others, as well as punishment for the offender. In the instant case the jury cannot be charged with assessing an unreasonable fine when the record discloses that defendant before the Police Magistrate was given the maximum fine of $200 for violation of section 956, supra, and the maximum fine of $100 for the violation of section 1116 supra, whereas the verdict of the jury in the county court assessed a fine of $50 for the first offense and $25 for the second.

Objection also was made to the admission of testimony in regard to the pickled pigs feet, on the theory that that was evidence looking toward the keeping of an unsanitary market, with which the defendant in this

case was not charged. We are of the opinion that it was properly admitted as also responsive to the question of violation of section 1116 supra.

■ Evidence introduced in support of defendant's case was to the effect that it was his custom to purchase bread and processed cheese in packages that had become broken or torn; that when any of the food from the broken or torn package became too old and unfit for human consumption because of exposure, then these articles were returned to the dealer who sold them, and defendant was given full credit therefor; that when any other food became unfit for human consumption, such as meat, he then sold it to rendering works or to certain customers who bought it for dog food; that he offered for sale only food that was fit for human consumption and had no intention of offering for sale to the public food that was not fit for use. The testimony of Kimball, his employee, was that the food which the inspectors seized was not fit for human consumption. It became a matter, therefore, for the jury to determine whether the food about which complaint was made was, as a matter of fact, offered or exposed for sale for human consumption and was adapted or designed to be used for human food.

We are of the opinion that instruction No. 3, tendered by defendant and given by the court over the objection of the prosecutor, amply protected defendant's rights on that point. This instruction read: "You are instructed that in order to convict the defendant of a violation of section 1116 of the Ordinances of the City and County of Denver you must find that the products seized were adapted or designed to be used, at the time they were seized, for human food, and unless you so find by a preponderance of the evidence, your verdict must be for the defendant."

From an examination of the record, we are of the opinion that no material or prejudicial error was committed, and that there was evidence from which a jury

could reasonably arrive at a verdict of guilty of violating the ordinances in question.

The judgment is accordingly affirmed.