No. 17,964.

CITY OF CANON CITY *v.* CLYDE JAMES MERRIS.

(323 P. [2d] 614)

Decided March 17, 1958. Rehearing denied April 14, 1958.

Mr. J. HARRISON HAWTHORNE, for plaintiff in error.

Mr. E. H. STINEMEYER, for defendant in error.

Mr. JOHN M. SAYRE, Counsel for the Colorado Municipal League, Amicus Curiae.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

MERRIS was charged with operating a motor vehicle on the streets of Canon City while under the influence of intoxicating liquor in violation of an ordinance of that city. The charge was made in a complaint filed in the Municipal Court of Canon City. To it Merris entered his plea of not guilty. At the conclusion of the trial of the issue Merris was found guilty and fined $275.00.

An appeal was taken to the County Court of Fremont County, and the issue tried de novo before a jury. A

verdict was returned finding Merris guilty as charged, and fixing the penalty at ten days in jail. Thereafter, Merris filed his Motion to Set Aside the Verdict of the Jury and Grant a New Trial, asserting eleven grounds for reversal. The city filed its Motion to Modify Verdict , and for Imposition of a Penalty, asking the court to order deleted from the verdict that portion of the verdict imposing the penalty and as thus amended itself impose the penalty.

After argument on the motions the County Court ordered the action dismissed. Canon City brings the case here for review upon error.

In seeking reversal Canon City advances three propositions, the first two of which are:

1. "Home-rule cities in Colorado have exclusive power over local and municipal matters. In the field of traffic regulation, some phases of regulation are considered to be matters of local and municipal concern, while others are regarded as being of state-wide concern. As to those which are local matters, home-rule cities may adopt whatever legislation they wish, even though such local legislation conflicts with state law. Drunken driving upon the streets of Colorado home-rule cities is actually, and should be judicially so determined, a matter of local and municipal concern."

2. "As to those phases of traffic regulation which are considered to be of state-wide concern, Colorado municipalities may always adopt local regulations which do not conflict with the state law. If the control of drunken driving is determined to be a matter of state-wide concern, Colorado municipalities nonetheless have jurisdiction to adopt local regulations bearing on this subject, providing the local legislation does not conflict with state law."

Canon City maintains that the trial court by its dismissal of the case disregarded these propositions and, in doing so, departed from ingrained principles of law and pursued dangerous innovation. We are told, in effect,

that, if we sustain the trial court, we will have turned the municipal bark from long established channels into uncharted waters where it is likely to founder on unknown shoals.

Inter alia Merris contended in his motion:

"1. That the ordinance fixing the penalty upon which the defendant was convicted * * * is unconstitutional and void in that it deprives the defendant of his rights of due process.

"2. That said ordinance exceeds the powers and jurisdiction of the city in that it seeks to regulate criminal powers withheld by the statute to the people of the State of Colorado.

"3. That said ordinance exceeds the powers and jurisdiction of the city in that it permits the infliction of penalties of either alternative, a fine or imprisonment, rendering that portion of said ordinance unconstitutional and void which permits imprisonment whereby the character of the offense is changed from a civil to a criminal action and the defendant thereby deprived of his constitutional right of reasonable doubt.

\* \* \*

"9. That the Court, by its instruction No. 3, erroneously and over the objection of the defendant deprived him of his constitutional right on burden of proof whereby the Court fixed the burden of proof as by a preponderance of the evidence instead of beyond a reasonable doubt.

\* \* \*

"11. That the Court erred in its refusal to give a tendered instruction on behalf of the defendant, withdrawing from the consideration of the jury the infliction of the penalty of imprisonment."

In disposing of the motion the trial court determined that the offense of driving while under the influence of intoxicating liquor was not a local and municipal matter giving rise to a civil action in debt, but was of state-wide concern; questioned the application of the preponderance

of evidence rule in the trial of such offense as a violation of the city ordinance; held that there is inconsistency in "the penalties prescribed and its manner of enforcement" between the law of the state and the ordinance of the city relating to the operation of vehicles while under the influence of intoxicating liquors, by reason of which the ordinance is rendered invalid; and dismissed the action.

The tangled skein of decisions involving ordinance violations is not just the product of our courts; other courts are enmeshed in the same problem. A reading of any of the standard texts on municipal corporations strongly suggests that an unravelling task should be undertaken. The law has been laggard in this field where definitive action for too long has seemed urgent.

A resort to expediency in the law is always dangerous; the individual dignity of the person and his rights are likely to be trammeled when such becomes the recourse of the law. And yet expediency appears to have been the motivating factor in the sanction given by the courts to the judicial processes used in the trial and disposition of violations of municipal ordinances. Pronouncements of this and other courts of review are replete with language recognizing that the modus operandi for the disposition of violations of ordinances is, of necessity, by summary proceedings.

Typical of this reasoning is the language contained in *McInerney v. Denver,* 17 Colo. 302, 29 Pac. 516:

"* * * It is needless to say that a judicial recognition of the right to a trial by jury, in all the local offenses above enumerated, would seriously impair the *usefulness and efficiency of city government.* Whatever may be the view concerning the gravity of the offense against a state law, the very fact that the legislature authorizes the city to deal with the same subject by ordinance indicates that, to the legislative mind, the act also properly constitutes one of those petty offenses regarded as local injuries. The public welfare, requiring the main-

tenance of peace and good order as well as of careful sanitary regulations in cities and towns, *renders summary proceedings in many cases a necessity;* and we are not now prepared to inaugurate the revolution that must follow the announcement of the doctrine that a jury trial is an indispensable prerequisite." (Emphasis supplied.)

Recent expression of this philosophy is found in the case of *Holland v. McAuliffe,* 132 Colo. 170, 286 P. (2d) 1107, in which this court said that "summary procedure in police court cases is countenanced from the standpoint of expediency."

■ Expedience may not override the Constitution of Colorado; it should not dethrone rights guaranteed thereunder. "If, one by one, the rights guaranteed by the federal Constitution can and must, for expediency's sake, be violated, abolished, stricken from that immortal document, and from state Constitutions, we will find ourselves governed by expediency, not laws or Constitutions, and the revolution will have come." *State v. Arregui,* 44 Ida. 43, 254 Pac. 788, 52 A.L.R. 463. See *Gouled v. U.S.,* 255 U.S. 298, 65 L.Ed. 647, 41 Sup. Ct. 261.

■ Application of this philosophy to ordinance violations has produced an anomaly: the trial is civil in nature, but the effects and consequences are criminal in fact. *Green v. Denver,* 111 Colo. 390, 142 P. (2d) 277; *Douglas v. Kansas City,* 147 Mo. 428, 48 S.W. 851. Label the judicial process as one will, no resort to subtlety can refute the fact that the power to imprison is a criminal sanction. To view otherwise is self-delusion. Courts should not, ostrich-like, bury their heads in the sand.

That the judicial conscience has had uneasy moments with this concept is revealed in our decisions. "But where the judgment, when against the defendant, may, as under this ordinance, include imprisonment in the first instance, the question becomes more embarrassing." *Greeley v. Hamman,* 12 Colo. 94, 20 Pac. 1. "The failure to follow that procedure [to file a complaint giving adequate notice of the charge], as so glaringly appears here,

is inexcusable, especially where the violation of city ordinances are held to be in the nature of civil cases although of a *quasi-criminal or penal nature where imprisonment may be inflicted."* (Emphasis supplied.) *Scott v. Denver,* 125 Colo. 68, 241 P. (2d) 857.

Courts of this state have been funambulating on this question of the nature of the action where a violation of an ordinance is charged. Most frequently it has been held that the action is civil in nature. *Deitz v. City of Central,* 1 Colo. 323; *Greeley v. Hamman,* supra; *Durango v. Reinsberg,* 16 Colo. 327, 26 Pac. 820; *Lloyd v. Canon City,* 46 Colo. 195, 103 Pac. 288; *Handler v. Denver,* 102 Colo. 53, 77 P. (2d) 132; *Green v. Denver,* supra; *Manzanares v. People,* 119 Colo. 156, 201 P. (2d) 532; *Snyder v. Denver,* 123 Colo. 222, 227 P. (2d) 341; *Harris v. People,* 123 Colo. 539, 234 P. (2d) 1055; *Walton v. Canon City,* 13 Colo. App. 77, 56 Pac. 671; *People v. Braisted,* 13 Colo. App. 532, 58 Pac. 796. In other cases the court has regarded the action quasi-criminal in nature. *Noland v. People,* 33 Colo. 322, 80 Pac. 887; *De Weese v. People,* 61 Colo. 140, 156 Pac. 594, L.R.A. 1916 E. 326. In *Scott v. Denver,* supra, Mr. Justice Holland speaking for the Court said that, although a civil action, it is quasi-criminal or penal where imprisonment may be imposed. It was stated in *Green v. Denver,* supra, that: "Even though prosecution for the offense may be in the nature of a civil action, the imposing of a penalty under a municipal ordinance has the same purpose as the imposition of a penalty under the criminal law," and that in administering punishment it was proper to consider the punishment of the offender and its effect as a deterrence to others.

Twinges of judicial conscience are revealed in another area of decision. Reference is made to the problem of double punishment. As early as 1885 in *Hughes v. People,* 8 Colo. 536, 9 Pac. 50, Mr. Justice Stone, in considering the plea of a former trial and conviction under

an ordinance, filed as a defense to an indictment, went with the tide in this language:

"* * * While I cannot help regarding these distinctions as refined, and more fictitious than real, and while the reasons given in the decisions in justification of what, after all, is practically double punishment for the same act, failed to satisfy me of the logical soundness of the doctrine, yet the great weight of authority appears to uphold this view: that in a case like this before us, the single act, being made punishable both by the general law of the state and by the ordinances of the town wherein it was committed, constitutes two distinct and several offenses, subject to punishment by the proper tribunals of the state and the municipality respectively; and we must therefore yield assent to the doctrine which we concede rests upon the greater weight of recognized authority."

A few years later Mr. Justice Helm, speaking for the Court in *McInerney v. Denver,* supra, voiced concern in these words:

"* * * The weight of authority likewise fairly sustains the view that a prosecution and punishment for one of these offenses is no bar to a proceeding for the other. Though, if it be not so provided by statute, *every fair-minded judge will, when pronouncing judgment in the second prosecution or proceeding, consider a penalty already suffered.*" (Emphasis supplied.)

The history of the nature and treatment of violations of municipal ordinances throws light on the present concept that trials of such violations are civil proceedings. Petty offenses were punishable by fines, and recovery of such fines was sought in an action of debt or assumpsit. This is clearly brought out in Tiedeman on Municipal Corporations, §156:

"In England, prior to the Corporation Act of 1835, the authority of the municipal corporation to enact by-laws, always rested upon implication of law. By that act, the municipal council was empowered to make such

by-laws as were necessary for the prevention and suppression of all nuisances, not punishable by act of Parliament. The corporation was also given the power to *impose fines* in a sum not to exceed five pounds. The act also prescribes that prosecution for the breach of any ordinance shall be begun within three months after the offence has occurred; and that the charge shall be made on oath; summons also must be served, but the magistrate may proceed without the appearance of the defendant, and may issue a warrant for his arrest. Upon conviction, the fine must be paid at once, unless the magistrate shall consider it proper to extend the time. If the fine is not paid, its payment may be enforced by a distress and sale; and for want of sufficent goods to distrain, the offender may be imprisoned for a period not to exceed one month, but which may be terminated upon the payment of the sum due. At the common law, the method of enforcing an ordinance was by an action by the municipal corporation or proper official against the offender, to recover the penalty imposed for the violation of the ordinance. This action was, in form, either *debt* or *assumpsit*.

The action of *assumpsit* was employed in the recovery of penalties, upon the theory that there had been a breach of the duty which, by a fiction of law, the defendant had promised the plaintiff to perform. The action of debt could be employed because the penalty was a sum certain, and in the nature of liquidated damages. And when it was expressly provided, that the penalty should be recovered by an action of debt, that form was exclusive, and no other could be employed.

Unless permitted by custom or statute, a city or town could not, by a by-law, prescribe that the penalty should be recovered by distress and sale. Where the mode of procedure to enforce ordinances is prescribed by statute or charter, that mode must be pursued. But when no statutory method is prescribed, the common law remedy by an action of debt or *assumpsit* as above outlined, may

be adopted; or where the common law forms have been abolished, the statutory civil action is the proper remedy. Unless expressly forbidden by statute, municipal corporations have the inherent power to provide for an action of debt, to recover a penalty in their own courts.

*In every case where it is sought to recover the amount of a fine or penalty by the method above described, the proceeding is civil rather than criminal; and the rules of civil procedure are generally applicable. When the method of procedure to enforce the payment of a fine or penalty is not by a suit at law, but by complaint before a municipal magistrate, who is to determine the matter and impose a fine, the proceedings have been sometimes deemed to be of a criminal or quasi criminal nature."* (Emphasis supplied.)

See also II Dillon on Municipal Corporations (5th Ed.), p. 974, §635; Willcock on Municipal Corporations 154; and 9 McQuillan on Municipal Corporations (3rd Ed.) §27.05.

Following this concept, the early cases in Colorado were actions of debt, to recover fines fixed by the ordinance. One of the earliest cases in this state, if not the earliest, was the case of *Deitz v. City of Central,* supra, in which the court said:

"The verdict seems to us to be substantially responsive to the issue. Although the proceeding is in form of an action of debt, the real question in issue was, whether the defendant had been guilty of a violation of the ordinance, and this issue is certainly settled by the verdict of guilty. The only other finding which, upon any principle, could have been made, is the common-law verdict, in the action of debt, that 'the defendant doth owe the said plaintiff the said sum of, etc., above demanded,' but it cannot be said that there is any specific debt or sum certain sought or demanded in such prosecution as this: the fine to be imposed, which is the only thing recovered, might be greater or less within certain limits, and in the absence of any regulation by ordinance,

it appears to us that the jury could have nothing to do with fixing the amount of this fine."

It will be noted that so long as the penalty for violation of a city ordinance was a fine assessable in a suit at law, the notion that the proceeding was civil in nature presented no problem, but with the establishment of procedures other than suits at law and with the advent of penalties by fine or imprisonment or both, courts had some misgivings about the retention of the idea that the proceedings continued to be civil in nature. Observe the comment of this court in *Greeley v. Hamman,* supra:

"But where the judgment, when against the defendant, may, as under this ordinance, include imprisonment in the first instance, the question becomes more embarrassing. In one treatise, at least, it is squarely asserted that, under such circumstances, the proceeding must be held criminal and must be governed by the principles and rules pertaining to criminal actions. Horr & B. Mun. Ord. secs. 169, 182, 184. And this position is sustained by several adjudicated cases."

The problem became further complicated when the subject of the ordinance was also covered by a statute of the state. *Hughes v. People,* supra. Judge Stone thought the distinctions drawn by the authorities in order to sustain two punishments were tenuous, but yielded to what he considered "the greater weight of recognized authority."

Article XX, Section 6 of the state constitution empowers cities and towns of this state to adopt charters which shall be the organic law and extend to all "local and municipal matters." "Such charter and the ordinances made pursuant thereto in such matters shall *supercede* within the territorial limits and other jurisdiction * * * any law of the state in conflict therewith." Among local and municipal matters upon which cities and towns may legislate is the imposition, enforcement and collection of fines and penalties for the violation of any

provisions of charters, or of any ordinances adopted in pursuance to charters. .

■ These are affirmative powers with which home-rule towns and cities are vested. Said article and section then makes more clearly definitive these powers by stating the converse of these powers. It is provided therein that the "statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns except in so far as *superseded* by the charters of such cities and towns or by ordinance passed pursuant to such charters." Further, the article and section provides that "Any act in violation of the provisions of such charter or of any ordinance thereunder shall be criminal and punishable as such when so provided by any statute now or hereafter in force."

Article XX, Section 6 concludes with the words, "This article shall be in all respects self-executing."

■ "Supersede" is defined "as meaning to supplant *·*·*;· to replace, displace, or set aside and put another in the place of; to take the place of by reason of superior worth, appropriateness, efficiency or right." 83 C.J.S., p. 889. In the company of words, appearing in Article XX, Section 6, the term "supersede" means that the law of the state is displaced on a local and municipal matter where there is an ordinance put in its place. Where, however, the matter is of state-wide concern, super-session does not take place. Application of state law or municipal ordinance, whichever pertains, is mutually exclusive.

■ Even though an ordinance effectually covers a local and municipal matter, and it is a counterpart of a law of the state, its violation is triable and punishable as a crime where so designated by the statute. Such is the plain import of Article XX, Section 6. Thereby, uniformity in treatment and disposition of an offense is achieved, whether the act is a statutory crime in the area of Fremont County surrounding Canon City, or a violation of the ordinance in Canon City.

The home-rule amendment is an application of the rule of reason. The earlier cases with some qualms permitted the municipality and the state to proceed against the offender, using the analogy of one act constituting a violation of a federal law and of a state law, offenses against two sovereigns. *Huffsmith v. People,* 8 Colo. 175, 6 Pac. 157; *People v. Hughes,* supra; *Greeley v. Hamman,* supra.

There is a fallacy in the resort to this analogy which seems to have been recognized by the framers of Article XX, Section 6. A municipality is an agency of the state; to it the state delegates certain powers and duties. *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777. Municipal corporations "are the creatures — mere political subdivisions — of the state, for the purpose of exercising a part of its powers." *Keefe v. People,* 37 Colo. 317, 87 Pac. 791. May something be done through an agency of the state which the state could not do directly? The state may not prosecute a defendant twice for an offense, and this being so, it is difficult to find a sanction for permitting the state to do indirectly through its agent what it cannot do directly. *Grafton v. U.S.,* 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1085 *People v. Hanrahan,* 75 Mich. 611, 42 N.W. 1124. See *Offenses Against The City,* 36 Minn. Law Rev. 143 (1951-1952); *Prosecutions Under State Law and Municipal Ordinance As Double Jeopardy,* 16 Cornell Law Quarterly (1930-1931).

■ Whether driving while under the influence of intoxicating liquor is a local and municipal matter or of state-wide concern makes little difference in the ultimate result of this case. Since there is a statute making such conduct a crime, its counterpart in the municipal laws of Canon City must be tried and punished as a crime. The violation having been prosecuted, tried and determined as a proceeding civil in nature, the trial court was properly moved to dismissal.

■ What is local and municipal is frequently difficult to determine. We hold that the operation of a

vehicle by one who is under the influence of intoxicating liquor is a matter of state-wide concern. Ordinarily, regulation of traffic is a local and municipal matter. *People v. Graham,* 107 Colo. 202, 110 P. (2d) 256. Hence, questions of speed, right of way, parking, designation of one-way streets, and similar measures, all regulatory in scope, are matters of local and municipal concern. But the state has decreed that driving while under the influence of intoxicating liquor or a narcotic is a forbidden act; it leaves nothing for the city to regulate; it is not regulatory in the true sense of the term. Regulation generally involves permission to do something with restrictions placed upon the permission. *Blumenthal v. City of Cheyenne,* 64 Wyo. 75, 186 P. (2d) 556.

Other alleged errors become immaterial in view of what we have here determined.

The judgment of the trial court is affirmed.

MR. JUSTICE MOORE specially concurring.

MR. JUSTICE KNAUSS dissenting.

MR. JUSTICE MOORE specially concurring:

The opinion of the court in this case is of utmost importance and will probably have a direct impact upon more citizens than any decision handed down within the past generation. The importance of the case is such that I desire my own views to be clearly expressed and I therefore file this specially concurring opinion.

The plain meaning of the constitutional provisions applicable to the controversy must be given their controlling effect. I shall quote from the constitution the pertinent language in the order in which it appears in Article XX, Section 6 under the caption "Home rule for cities and towns."

First it is provided that:

"The people of each city or town of this state, having a population of two thousand inhabitants as determined

by the last preceding census taken under the authority of the United States, the state of Colorado or said city or town, are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter or said city or town, which shall be its organic law and extend to all its local and municipal matters."

By this language the city is vested with power to create its "organic law" the charter, and to amend, add to or replace it. We must however remember at all times that the power thus vested to create "organic law" in the form of charter provisions is expressly limited "to all its local and municipal matters." No power whatever is given to adopt charter provisions dealing with matters of statewide concern.

Second, it is provided by the constitution that:

"Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith." This language, with the utmost certainty, limits the legislative powers of the city to matters that are of "local and municipal" concern as distinguished from those of general or statewide reference.

Third: The constitution then provides that the home rule city shall have "* * * all other powers, necessary, requisite or proper for the government and administration of its *local and municipal matters,* including power to legislate upon, provide, regulate, conduct and control: * * *" (Emphasis supplied.) (Here follows certain identified areas of legislative action all of which are well within the coverage of the term "local and municipal matters.") This language serves to re-emphasize the limitations upon municipal legislative power to purely "local and municipal matters." Included within the mentioned powers we find under subsection (h) the authority of the city to legislate in, "The imposition, enforcement and collection of fines and penalties for the violation of any of the provisions of the charter, or of

any ordinance adopted in pursuance of the charter." It is clear that no fine or penalty could be imposed, enforced or collected by the city for an asserted violation of a purported ordinance which did not concern a "local or municipal matter."

Fourth — it is next provided by the constitution that:

"It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right."

Here again definite emphasis is given the limitations placed upon the delegated legislative power to "local and municipal matters."

Fifth — the constitution provides:

"The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

The meaning of this language is plain. There is no room for strained construction. The effect of it is that until such time as a home rule city enters a given field of legislative enactment by a *proper* exercise of the delegated legislative power, the applicable law of the state shall govern. If the state law is to be rendered ineffective within the city limits on a matter which is "local and municipal" the city council can adopt an ordinance which thereupon "supersedes" the state law within the city limits. By no stretch of the imagination can this constitutional provision be held to warrant the adoption of a city ordinance on a matter which is of general or statewide concern as distinguished from a "local or municipal matter."

Sixth, and of the utmost importance, it is provided by the constitution that:

"Any act in violation of the provisions of such charter or of any ordinance thereunder *shall be criminal and punishable as such* when so provided by any statute now or hereafter in force." (Emphasis supplied.) This provision never has been mentioned in any of the several cases, decided by this court, which have considered the nature of a prosecution for the violation of a municipal ordinance.

When the fundamental law of the state, which takes precedence over all acts of the city council, states in plain English that conduct which violates a particular city ordinance "shall be criminal and punishable as such," by what authority is this or any other court to decree that the alleged violation shall be deemed a civil action, not criminal, and shall be punishable under rules applicable to civil cases and not under procedures governing criminal cases? How can an illegal act be punishable, as a criminal act is punishable, when all the protections afforded one accused of a "criminal" act are denied to the accused upon his trial for an alleged violation of the ordinance based upon conduct which the constitution says must be held to be "criminal"?

I hold that this portion of the constitution amounts in substance to a reaffirmance of the Bill of Rights. It recognizes that any person who is accused of committing an act, which is a crime under the general law of the state, is entitled to be tried before a jury for that alleged offense under the time honored and well established rules applicable to criminal cases. It means that a person who is alleged to have committed the same act within the boundaries of a home rule city cannot be deprived of the basic protections guaranteed by the Bill of Rights simply because the effort to subject him to fine or imprisonment takes the form of an alleged violation of a city ordinance.

In every prosecution by a home rule city, in a munici-

pal court, for the purpose of assessing a fine or adjudging a sentence of imprisonment for an alleged violation of an ordinance there is at once presented the question as to whether the ordinance was one dealing with a "matter of local and municipal" concern and thus within the power of the city council to enact. If the ordinance in question purports to impose fines or imprisonment for conduct which is of statewide concern and which is not a "local or municipal matter," the ordinance is void and unenforceable in any court.

The second question which presents itself in proceedings to collect fines and impose penalties for alleged violation of such municipal ordinances is no less important. I state it thus: Where the ordinance in question is admittedly one which concerns a "local and municipal matter"; where the conduct which allegedly violates the city ordinance would subject the accused to criminal prosecution under the statutory law of the state, if committed outside the city; can the offender be tried in the municipal court and thereby be deprived of any rights to which he would be entitled in the trial of a criminal case? This question requires an emphatic negative answer. In such a case the state law is inoperative within the home rule municipality. It has been "superseded" therein by the adoption of an ordinance relating to a "local and municipal matter." The prosecution in the municipal court is the only lawful one to be had. A prosecution in the state court could not be sustained for the reason that the state law has been "superseded" within the municipality. The constitution provides however that the proceedings at the municipal court level shall continue to be "criminal and punishable as such." This positive language cannot be construed to mean that the proceedings shall be considered civil in nature and prosecutions thereunder governed by the rules applicable to civil cases.

By constitutional definition the alleged act of the accused in the instant case was "criminal and punishable

as such." Article II, Section 16 of the Constitution of Colorado provides:

"In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

Even assuming that the ordinance was enacted in connection with a "local and municipal matter" and that the municipal court had jurisdiction to try the case, the defendant could not be deprived of these basic rights.

There is yet another firm ground upon which the affirmance of the judgment is imperative. The prohibition against driving an automobile under the influence of intoxicating liquor is not a "local or municipal matter." It is a matter of greatest concern to every citizen of the state. It is of statewide importance and is covered by statutes of statewide application. The only courts empowered to conduct prosecutions for this type of offense are the courts of the state. The home rule cities have not been delegated the power to legislate in this matter of statewide concern.

I deem it to be the duty of this court to breathe life and vitality into the constitutions of the state and the nation, to the end that they shall in a practical way accomplish for the individual the objectives intended by the people who adopted them as the supreme law of the land. I am not interested in mental gymnastics, the purpose of which is to search for some plausible excuse for holding a constitutional provision to be an empty shell when resorted to by one for whose benefit the provision was unquestionably intended.

The danger which threatens our democratic processes does not stem from the actions of appellate courts which give strength, vitality and new life to constitutional

provisions. The danger is that all too often courts of last resort fritter away constitutional protections, and little by little destroy the basic freedoms of which we speak so often and which we actually apply too seldom in bringing them within the reach of the citizen.

Article XX of the Colorado Constitution was not intended to repeal the Bill of Rights, or any part thereof. A practice, even though long continued, under the purported authority of a municipal ordinance, cannot prevail over the constitutional right of one threatened with fine or imprisonment to be tried under the minimum safeguards provided by the Bill of Rights and under procedures which measure up to the requirements of due process of law.