CITY OF GREENWOOD VILLAGE, by
and on Behalf of The STATE of
Colorado, Petitioner,

v.

Michael Wayne FLEMING, Respondent.

No. 80SC195.

Supreme Court of Colorado,
En Banc.

March 29, 1982.

Rehearing Denied April 19, 1982.

Banta, Hoyt, Malone & Banta, P. C., Stephen G. Everall, Englewood, Ann Allott, Asst. City Atty., Littleton, for petitioner.

James A. Dubee, Littleton, for respondent.

QUINN, Justice.

We granted certiorari to review a decision of the district court of Arapahoe County, which invalidated an ordinance and a procedural system of adjudication adopted thereunder by the petitioner, City of Greenwood Village, as violative of Article XX, Section 6, of the Colorado Constitution. The ordinance in question purported to decriminalize Class 3 and Class 4 traffic offenses. A separate procedural system, civil in nature, was established by the city for the adjudication of these violations. The respondent, Michael Wayne Fleming, had been charged with violating the city's speeding ordinance, a class 3 traffic offense. The municipal court of Greenwood Village granted the respondent's pretrial motion to dismiss on the ground that the decriminalization ordinance and the city's civil system of adjudication violated that part of Article XX, Section 6, of the Colorado Constitution, commonly referred to as "the counterpart provision" of the Home Rule Amendment. The city appealed the judgment of dismissal to the district court. Although agreeing that the ordinance and civil system of adjudication violated the counterpart provision, the district court reversed the judgment of dismissal and returned the case to the municipal court with directions to reinstate the charge and to conduct the trial in accordance with those basic safeguards applicable to a criminal prosecution. We conclude that the ordinance and civil system for adjudicating class 3 and class 4 traffic offenses are constitutionally infirm but nevertheless are severable from other provisions of the municipal code and, therefore, we affirm the judgment of the district court.

### I.

In 1977 the City of Greenwood Village (city), a home rule city, entered into a contract with the Colorado Department of Highways, Division of Public Safety, with the stated objective of implementing and evaluating "a demonstration project of administrative adjudication for minor traffic offenses...." The contract provided that the city, in consideration of funding under

the Highway Safety Act,[1] would enact ordinances necessary to implement the decriminalization of minor traffic offenses, would promulgate rules of procedure to achieve that purpose, and would establish a municipal court to adjudicate these offenses as civil matters.

In 1978 the city passed ordinance No. 10, subsequently codified as section 11.1.01 of the Greenwood Village Municipal Code, which provides in pertinent part:

"A) Any person who is convicted of any act prohibited or declared to be unlawful by any section of Chapter 11 of this Code shall be subject to the following penalties, which are based upon the classification of each offense as set forth in Chapter 11.

| Class | Minimum Sentence | Maximum Sentence |
|-------|------------------|------------------|
| 1 | There are no Class 1 traffic offenses contained in Chapter 11 of this Code. | |
| 2 | 10 days imprisonment, or $10 fine, or both. | 10 days imprisonment, or $300 fine, or both. |
| 3 | $10 fine. | $100 fine, no imprisonment. |
| 4 | $10 fine. | $10 fine, no imprisonment. |

"B) A Class 3 or Class 4 traffic offense as defined herein is not a crime, and the punishment imposed therefor shall not be deemed, for any purpose, a penal or criminal punishment.

"C) Any person who is charged with any class of traffic offense contained herein shall be entitled to a trial by jury."

Section 11.1.02 of the traffic code establishes a penalty assessment notice in lieu of a summons and complaint for class 3 and class 4 traffic offenses. Under the terms of the ordinance the acceptance of the notice constitutes an acknowledgement of guilt by the offender and a promise to pay a specified fine within 20 days from the date of the violation. If the offender refuses to accept the penalty assessment notice, then the notice is treated as a summons and complaint and "processed accordingly."[2] Local ordinances establish a municipal court referee system authorizing referees to conduct hearings for Class 3 and Class 4 violations whenever a defendant waives a hearing before the municipal judge.[3] By municipal court rule a hearing before a referee is conducted as a civil proceeding under the preponderance of evidence standard,[4] with the possibility of a default judgment upon non-appearance.[5] The referee's determination is final unless the defendant makes a request for a trial *de novo* before the municipal judge, in which case the matter is then tried before the judge as a civil case. In addition to the preponderance of evidence standard and the possibility of a default judgment, the other principal feature of the civil system of adjudication is that the defendant does not enjoy the privilege against self-incrimination and may be called as a witness by the city in any hearing or trial.[6]

Section 11.5.01 of the municipal code makes speeding up to 19 miles an hour in excess of the authorized limit a class 3 traffic offense. Subsections C) and D) of this ordinance are virtually identical to sec-

---

1. 23 U.S.C. § 402 provides for the funding of state highway safety programs approved by the Secretary of Transportation.

2. City of Greenwood Village, Municipal Code, section 11.1.02 C) (1978).

3. City of Greenwood Village, Municipal Code, section 5.4.01–4.05 (1978).

4. City of Greenwood Village, Municipal Court Rules For Proceedings Before Referee, Rule 6 (1978).

5. City of Greenwood Village, Municipal Code, section 5.2.10 (1978).

6. City of Greenwood Village, Municipal Code, section 5.4.03 (1978). The record does not indicate that the defendant ever elected to have his case heard before a referee and, therefore, he did not challenge the validity of the referee system nor did the district court address the issue. To the extent that the referee system permits a conviction under the preponderance of evidence standard and does not recognize the defendant's privilege against self-incrimination, it suffers from the same constitutional infirmities as the city's civil system of adjudication in a trial before the municipal judge. We express no view of any other features of the referee system.

tion 42–4–1001(7)(b) and (i), C.R.S.1973 (1981 Supp.), and provide in pertinent part as follows:

"C) Notwithstanding any other provision of this section, no person shall drive a vehicle on a street or highway within this municipality in excess of maximum lawful speed of fifty-five miles per hour. Prima facie speed limits in excess of fifty-five miles per hours [sic] which were in existence prior to the effective date of the ordinance codified herein are lowered to a maximum lawful limit of fifty-five miles per hour. No speed limit shall be authorized above fifty-five miles per hour, and all fifty-five-mile-per-hour speed limits shall be considered maximum lawful speed limits and not prima facie speed limits.

"D) An offense of speeding one to nine miles per hour over the prima facie speed applicable or over the maximum lawful speed of fifty-five miles per hour is a Class 3 traffic offense. An offense of speeding ten to nineteen miles per hour over the prima facie speed applicable or over the maximum lawful speed of fifty-five miles per hour is a Class 3 traffic offense."

On January 5, 1979, Michael Wayne Fleming was issued a summons and complaint charging him with violating section 11.5.01 of the city's traffic code by driving 70 miles per hour in a 55 mile-per-hour zone, a class 3 traffic offense. The offense allegedly occurred on Interstate Highway 25 within the borders of the city. Fleming through counsel filed a motion to dismiss the summons and complaint, alleging that the decriminalizing ordinance and the city's procedure for prosecuting class 3 traffic offenses violated the counterpart provision

of the Home Rule Amendment, *Colo.Const.* Art. XX, Sec. 6, which provides in pertinent part:

"Any act in violation of the provisions of such charter or of any ordinance thereunder shall be criminal and punishable as such when so provided by any statute now or hereafter in force."

In granting the motion to dismiss the municipal court held that speeding was a crime under state statute, section 42–4–1001, C.R. S.1973 (1981 Supp.), and, therefore, the counterpart provision prohibited the city from establishing a civil system for handling such violations. The district court followed basically the same reasoning in holding unconstitutional the decriminalizing ordinance and the procedural system established thereunder; however, rather than dismiss the charge, the court ordered the municipal court to accord the respondent those procedural safeguards applicable to a criminal prosecution, particularly, in addition to a jury trial, proof of guilt beyond a reasonable doubt and the privilege against self-incrimination.[7]

In arguing for reversal of the district court's ruling of unconstitutionality, the city argues that the broad powers conferred upon cities by the Home Rule Amendment, *Colo.Const.* Art. XX, Sec. 6, permits it to decriminalize speeding, notwithstanding the counterpart provision of the same amendment. Alternatively, the city urges us to interpret the counterpart provision so as to limit its application to those instances where a counterpart state statute expressly provides that a violation of an ordinance proscribing the same conduct "shall be criminal and punishable as such;" and, under this interpretation, since section 42–4–

7. In its ruling the district court also stated that "[i]t is a denial of due process of law to prosecute the defendant for an alleged violation of the maximum speed limit on an interstate highway, under rules of civil procedure, *i.e.*, proof by a preponderance of the evidence and the denial to defendant of his privilege against self-incrimination." The city interprets this part of the court's decision to mean that any attempt by the city to prosecute a traffic violation under a civil system of procedure would violate due process, even in the absence of a counter-

part state statute prohibiting the same conduct as criminal, and the city urges us to reverse this part of the district court's ruling. However, because we hold that the city's decriminalizing ordinance violates the counterpart provision of the Home Rule Amendment, *Colo. Const.* Art. XX, Sec. 6, it is unnecessary for us to consider whether and under what circumstances a city properly might decriminalize traffic violations where there is no counterpart state statute proscribing the same conduct as criminal.

1001, C.R.S.1973 (1981 Supp.), does not specifically mandate that a violation of a speeding ordinance shall be a criminal offense, the city argues that section 11.1.01 B) of the municipal code and its civil system of adjudication do not violate the counterpart provision. The city also asserts that even if its suggested interpretation of the counterpart provision is rejected, there is no criminal statutory counterpart to the ordinance because: (1) the statutory classification of speeding as a "misdemeanor traffic offense" indicates a legislative intent to exclude these offenses from the category of crimes; and (2) the legislative intent to decriminalize speeding is further evidenced by the statutory grant of authority to municipalities to enforce their own traffic laws independently of the penalties applicable to similar state offenses. The city further contends that even if its civil system of adjudication violates the counterpart provision, that system nevertheless may be employed in cases involving speeding on city streets, a matter of purely local concern. We shall address these arguments separately.

## II.

█ We first consider the city's threshold claim that the broad powers conferred upon it by the Home Rule Amendment permit it to establish a civil system of adjudication for traffic offenses. We reject the city's claim as contrary to the basic purpose of the counterpart provision of the Home Rule Amendment.

█ We have interpreted the Home Rule Amendment as a grant to home rule cities of plenary legislative authority to regulate and penalize matters of local concern, with the result that a home rule city's ordinance will supersede a conflicting state statute on the same subject matter. *See, e.g., People v. Hizhniak*, 195 Colo. 427, 579 P.2d 1131

(1978); *Vela v. People*, 174 Colo. 465, 484 P.2d 1204 (1971); *City and County of Denver v. Henry*, 95 Colo. 582, 38 P.2d 895 (1934).[8] This is not to say, however, that this legislative authority is not bounded by constitutional limitations. The counterpart provision is one such limitation, as illustrated by *Canon City v. Merris*, 137 Colo. 169, 323 P.2d 614 (1958).

Merris was charged with driving on the streets of Canon City while under the influence of intoxicating liquor, a municipal ordinance violation. The ordinance, as here, permitted a conviction upon proof of guilt by a preponderance of evidence. After being convicted in the municipal court, Merris appealed to the county court which ultimately dismissed the charge. In affirming the judgment of dismissal, we stated:

"Even though an ordinance effectually covers a local and municipal matter, and it is a counterpart of a law of the state, its violation is triable and punishable as a crime when so designated by the statute. Such is the plain import of Article XX, Section 6. Thereby, uniformity in treatment and disposition of an offense is achieved, whether the act is a statutory crime in the area of Fremont County surrounding Canon City, or a violation of the ordinance in Canon City.

\*   \*   \*   \*   \*   \*

"Whether driving while under the influence of intoxicating liquor is a local and municipal matter or of state-wide concern makes little difference in the ultimate result of this case. Since there is a statute making such conduct a crime, its counterpart in the municipal laws of Canon City must be tried and punished as a crime. The violation having been prosecuted, tried and determined as a proceeding civil in nature, the trial court was

---

8. A state statute will supersede a conflicting municipal charter or ordinance on a matter of exclusively state-wide concern. *E.g., City and County of Denver v. Palmer*, 140 Colo. 27, 342 P.2d 687 (1959). In areas of both local and state-wide interest, a home rule city may legislate in a supplemental fashion that does not conflict with state legislation. *E.g., DeLong v. City and County of Denver*, 195 Colo. 27, 576 P.2d 537 (1978); *Woolverton v. City and County of Denver*, 146 Colo. 247, 361 P.2d 982 (1961).

properly moved to dismissal." 137 Colo. at 180–81, 323 P.2d at 620.[9]

■ The import of *Merris* is clear. The "violation of an ordinance which is the counterpart of a criminal statute should be tried and punished under the protections applicable to criminal cases even though prosecuted in a municipal court." *Zerobnick v. Denver*, 139 Colo. 139, 141, 337 P.2d 11, 13 (1959); *see also Schooley v. Cain*, 142 Colo. 485, 351 P.2d 389 (1960); *Geer v. Alaniz*, 138 Colo. 177, 331 P.2d 260 (1958). Thus, when the state has proscribed certain conduct as a criminal offense, the counterpart provision of the Home Rule Amendment prohibits a home rule city from removing such basic criminal safeguards as proof of guilt beyond a reasonable doubt and the privilege against self-incrimination in a prosecution for violating a municipal ordinance proscribing the same conduct. Neither the city's status as a home rule city nor its claim of a substantial local interest in the subject matter addressed by the ordinance is sufficient justification for thwarting the constitutional mandate that "[a]ny act in violation of the provisions . . . of any ordinance . . . shall be criminal and punishable as such when so provided by any statute now or hereafter in force." *Colo.Const.* Art. XX, Sec. 6. Basically, the city's argument is nothing more than a request to overrule *Merris*. This we decline to do.

### III.

■ We next consider the city's argument that the counterpart provision of the Home Rule Amendment should be construed so as to apply only when a state statute expressly provides that any violation of a counterpart municipal ordinance "shall be criminal and punishable as such." Such an interpretation, the city states, would harmonize the local-state dichotomy by vesting local municipalities with authori-

ty to establish their own system for dealing with matters not expressly determined by the legislature to be of statewide concern. We find no merit in this argument.

Nothing in *Canon City v. Merris, supra,* or in our post-*Merris* decisions suggests that the counterpart provision of the Home Rule Amendment requires a separate legislative enactment expressly directing municipalities to punish as criminal the identical conduct proscribed as such by state statute. *Vela v. People, supra; Schooley v. Cain, supra; Zerobnick v. Denver, supra; Geer v. Alaniz, supra.* Rather, the determinative consideration is whether the conduct proscribed and punished by an ordinance is categorized as a criminal offense under a counterpart statute. If it is, then the constitutional mandate of the counterpart provision is self-executing and requires no legislative implementation. Thus, the General Assembly's failure to enact legislation making violations of a municipal speeding ordinance "criminal and punishable as such" is of no significance to the applicability of the counterpart provision of the Home Rule Amendment to the city's speeding ordinance in this case. The appropriate inquiry is whether there is a statutory counterpart to the city's speeding ordinance and, if so, whether the conduct proscribed by the statute is "criminal and punishable as such." If there is such a statutory counterpart, then the city's procedural system for adjudicating ordinance violations cannot be squared with the underlying purpose of the counterpart provision.

### IV.

That there is a statutory counterpart to subsections 11.5.01 C) and D) of the city's traffic code cannot reasonably be disputed. The city's speeding ordinance is in substantial form a duplication of subsections 42–4–1001(7)(b) and (i), C.R.S.1973 (1981 Supp.), which provide as follows:

> "Our holding that there is nothing basically invalid about legislation on the same subject, by both a home rule city and the state, does not affect the salutary holdings of the *Merris* case requiring criminal law safeguards to be observed in municipal prosecutions."

**9.** Although we since have rejected certain statements in *Merris* about the mutual exclusivity of matters of local and statewide concern, we consistently have adhered to *Merris*' interpretation of the counterpart provision. As we observed in *Vela v. People*, 174 Colo. 465, 469, 484 P.2d 1204, 1206 (1971):

"(b) Notwithstanding any other provisions of this section, no person shall drive his vehicle on a highway, as defined in section 42–1–102(33), in excess of a maximum lawful speed of fifty-five miles per hour. Prima facie speed limits in excess of fifty-five miles per hour which were in existence prior to January 24, 1974, are hereby lowered to a maximum lawful limit of fifty-five miles per hour. No speed limit shall be authorized above fifty-five miles per hour, and all fifty-five-mile speed limits shall be considered maximum lawful speed limits and not prima facie speed limits.

"(i) An offense of speeding one to nine miles per hour over the prima facie speed applicable is a class 3 traffic offense; an offense of speeding ten to nineteen miles per hour over the prima facie speed applicable is a class 3 traffic offense...."

Section 42–4–1501(2)(a), C.R.S.1973 (1981 Supp.), sets the penalty for class 3 traffic offenses at a minimum fine of $5 and a maximum fine of $100. Thus, there is no significant distinction between the proscription of speeding in the city's traffic code and the statutory proscription under state law.

Notwithstanding the existence of a statutory counterpart, the city nevertheless asserts that state speeding violations are not "criminal and punishable as such" within the meaning of the counterpart provision. The city's claim stems from two statutory sources, namely the statutory reclassification of speeding violations as "misdemeanor traffic offenses", section 42–4–1501(1), C.R.S.1973 (1981 Supp.), and the statutory grant of authority to municipalities to enforce their traffic ordinances independently of the penalty provisions applicable to state misdemeanor traffic offenses, section 42–4–108(2), C.R.S.1973. We are not persuaded by the city's contention.

■ The first prong of the city's argument is that the statutory reclassification of speeding violations from misdemeanors to "misdemeanor traffic offenses," Colo.Sess. Laws 1975, ch. 366, § 42–4–1501 at 1546, and the fine-only penalty scheme for class 3 and 4 speeding violations evince a legislative intent to exclude such offenses from the category of crimes. However, we do not believe the mere addition of the term "traffic offenses" to the word "misdemeanor" determines the character of the proscribed conduct as criminal or noncriminal. *See Phillips v. County Court*, 42 Colo.App. 187, 591 P.2d 600 (1979). "The terms offense and crime are synonymous and mean a violation of, or conduct defined by, any state statute for which a fine or imprisonment may be imposed." Section 18–1–104(1), C.R.S.1973 (1978 Repl. Vol. 8). The establishment of a penalty scheme of fines only affects the seriousness of the offense but does not necessarily determine the character of the violation as criminal or noncriminal. In determining whether conduct has been effectively decriminalized, other factors should also be considered such as, for example, the presence or absence of a legislative declaration of intent to establish a system of administrative as distinguished from criminal adjudication, the right of law enforcement officers to arrest and detain an individual for the proscribed conduct, whether a judgment of conviction carries stigmatizing or condemnatory significance, and the collateral consequences attaching to a conviction. *See, e.g., Brown v. Multnomah County District Court*, 280 Or. 95, 570 P.2d 52 (1977).

■ In analyzing sections 42–4–1501(2)(a), C.R.S.1973 (1981 Supp.), by these criteria, we find no expression of legislative intent to decriminalize minor traffic violations by denominating them "misdemeanor traffic offenses" and proscribing a fine-only penalty scheme for certain grades of these offenses. Moreover, arrest and detention for commission of misdemeanor traffic offenses, although not mandated, is nonetheless authorized under the statutory scheme. *See* section 42–4–1501(4)(a), C.R.S.1973 (1981 Supp.). Also, the statutory classification of misdemeanor traffic offenses retains condemnatory terminology such as: "penalties ... authorized upon conviction," section 42–4–1501(2)(a); "whether the violator acknowledges his guilt," section 42–4–

1501(3)(a)(I)(A); "whether the violator . . . is found guilty by a court of competent jurisdiction," section 42–4–1501(3)(a)(I.1)(A). The overall penalty scheme for misdemeanor traffic offenses, including classes 1 through 4, extends from a minimum fine of $5 for a class 4 offense to a maximum sentence of one year imprisonment for a class 1 offense. This penalty scheme, in our opinion, furnishes strong evidence of legislative intent to treat these violations as criminal in character. Finally, although not as significant as other factors, the collateral consequences of a conviction include the assessment of penalty points and the possible suspension of the driving privilege. Section 42–2–123(1)(a) and (5)(f), C.R.S.1973.[10]

■ The second prong of the city's argument proceeds from section 42–4–108(2), C.R.S.1973, which provides:

"The municipal courts have jurisdiction over violations of traffic regulations enacted or adopted by municipalities. However, the provisions of sections 42–4–1501 [penalties for misdemeanor traffic offenses] 42–4–1504 [appearance before a county judge without unnecessary delay after arrest], and 42–4–1505 [notice to appear in court] shall not be applicable to municipalities."

We find nothing in the statute suggesting that municipalities may enforce traffic regulations within their jurisdiction in disregard of the counterpart provision of the Home Rule Amendment. Indeed, as long as the conduct forbidden by the ordinance is also proscribed as criminal and punishable as such under a state statute, any statutory grant of authority to municipalities to prosecute and adjudicate speeding violations under a civil system of procedure would run afoul of the very protections contemplated by the counterpart provision itself. Section 42–4–108(2) does no more than grant a municipality the authority to prosecute violations of its traffic ordinances through its own court system under a penalty scheme of its own choosing, but always consistent with the procedural protections accorded a defendant charged with violating a state statute proscribing the same conduct.[11]

### V.

■ The city argues that even if section 11.1.01 B) of the municipal code offends the counterpart provision of the Home Rule Amendment, we nevertheless should hold that the ordinance and the civil system for adjudicating class 3 and class 4 traffic violations may be enforced as to speeding violations on city streets, since such violations are a matter of local interest only. As we previously indicated, the local interest addressed by a municipal ordinance is not a significant factor in the application of the counterpart provision. *E.g., Canon City v. Merris, supra; Geer v. Alaniz, supra.* What is significant is the proscription and punishment by ordinance of conduct which is criminal and punishable as such by state statute. With this in mind, the city's ordinance and civil system of adjudication can be no more constitutional as applied to speeding on local streets than as applied to state highways. Therefore, our conclusion in this case would be no different had the offense occurred on a city street rather than on Interstate 25.

### VI.

■ Because there is a statutory counterpart to the city's speeding ordinance and

---

**10.** Any doubt concerning the criminal character of class 3 and 4 misdemeanor traffic offenses has been dispelled by our recent decision in *Olinyk v. People,* Colo., 642 P.2d 490 (1982). We there held that the General Assembly proscribed speeding in excess of the 55 mile-per-hour speed limit as criminal conduct enforceable through the penalty sanctions of section 42–4–1501(2)(a), C.R.S.1973 (1981 Supp.).

**11.** The legislature well might choose to decriminalize certain types of traffic violations and

utilize a system of administrative rather than criminal adjudication of these infractions. *Rosenthal v. Hartnett,* 36 N.Y.2d 269, 367 N.Y. S.2d 247, 326 N.E.2d 811 (1975). However, it has not done so and as long as the ordinance proscribes the same conduct as is classified and punished as criminal by state statute, the counterpart provision of the Home Rule Amendment prohibits the adjudication of an ordinance violation under a civil system of procedure.

the statutory counterpart proscribes speeding as a criminal offense, we hold that section 11.1.01 B) of the city's municipal code, which classifies class 3 and class 4 traffic offenses as non-criminal offenses, violates the counterpart provision of Article XX, Section 6, of the Colorado Constitution. Specifically, section 11.1.01 B) of the municipal code permits persons prosecuted for class 3 and class 4 traffic offenses to be convicted under a preponderance of evidence standard, as distinguished from proof beyond a reasonable doubt, and without the privilege against self-incrimination. Being constitutionally infirm, section 11.1.01 B) is unenforceable.

However, the constitutional infirmity in section 11.1.01 B) does not prevent the enforcement of other provisions of the municipal code as long as these other provisions "are complete in themselves, not dependent on the void portion, and, therefore, can be given legal effect." *Covell v. Douglas*, 179 Colo. 443, 449, 501 P.2d 1047, 1050 (1972), *cert. denied* 412 U.S. 952, 93 S.Ct. 3000, 37 L.Ed.2d 1006 (1973).[12] A review of the municipal code satisfies us that the enforcement of the traffic offense of speeding, which is proscribed by section 11.5.01, is not dependent upon the civil system of adjudication contemplated by section 11.1.01 B). Nor is the application of the penalty scheme for class 3 and class 4 traffic offenses inseparably connected with the void provisions of section 11.1.01 B). Rather, when the constitutionally deficient provisions of section 11.1.01 B) are stricken, there remains a complete and workable system of enforcing and adjudicating speeding violations under appropriate criminal safeguards. *See Geer v. Alaniz, supra.* Thus, the city may prosecute the respondent for violating the speeding ordinance but, as the trial court held, he

must be accorded the same rights granted to a defendant charged with violating the statutory counterpart of the ordinance including, as pertinent here, prosecutorial proof of guilt beyond a reasonable doubt and the privilege against self-incrimination.[13]

The judgment is affirmed.

---

**12.** City of Greenwood Village, Home Rule Charter, Art. IV. Sec. 4.9 (1968), states:

"Unless an ordinance shall expressly provide to the contrary, if any portion of an ordinance or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not effect [sic] the remaining portions or applications of the ordinance which can be given effect without the invalid portion or application, provided such remaining portions or ap-

plications are not determined by the court to be inoperable, and to this end ordinances are declared to be severable."

**13.** Section 11.1.01 C) of the Greenwood Village Municipal Code specifically guarantees the right to a trial by jury for class 3 and 4 traffic offenses. It is the deprivation of the other rights basic to a criminal prosecution which creates the constitutional infirmity in this case.