The PEOPLE of the State of
Colorado, Petitioner,

v.

Robert Dennis GANDY, Respondent.

The PEOPLE of the State of
Colorado, Petitioner,

v.

Kirk Howard REICHENBERG,
Respondent.

Nos. 83SC43, 82SC133.

Supreme Court of Colorado,
En Banc.

June 18, 1984.

Alexander M. Hunter, Dist. Atty., Joan Friedland, Deputy Dist. Atty., Boulder, for petitioner.

David F. Vela, Colorado State Public Defender, Peter Schild, Deputy State Public Defender, Boulder, for respondent in No. 83SC43.

Harry J. Holmes, Hal D. Blacker, Longmont, for respondent in No. 82SC133.

QUINN, Justice.

We granted the People's petition for certiorari to review two district court judgments vacating county court convictions for the misdemeanor offense of driving under suspension and remanding the cases to the county court to conduct an evidentiary hearing on the constitutional validity of the underlying traffic offense convictions on which the administrative orders of suspension were based. We affirm the judgments of the district court.

I.

The Motor Vehicle Division of the Department of Revenue has authority to suspend the license of any driver who has been convicted of traffic violations resulting in the accumulation of points in excess of an authorized maximum. § 42–2–123(1)(a), 17 C.R.S. (1983 Supp.). Operating a motor vehicle while one's license is suspended constitutes the misdemeanor offense of driving under suspension, § 42–2–130(1)(a),

17 C.R.S. (1983 Supp.), punishable by imprisonment in the county jail "for not less than five days nor more than six months, and, in the discretion of the court, a fine of not less than fifty dollars nor more than five hundred dollars ...." The minimum sentence of five days is mandatory in the absence of a showing that the operator drove the motor vehicle because of an emergency.

On December 18, 1980, Robert Dennis Gandy was stopped by a Boulder police officer for driving with expired license plates. The officer checked with the police dispatcher and determined that Gandy's license to operate a motor vehicle had been suspended on November 25, 1980. Gandy's suspension was based on the accumulation of fifteen points in a twelve month period for various moving violations. He moved to dismiss the driving under suspension charge on the ground that one of the convictions underlying the suspension order, a fine-only penalty assessment conviction for careless driving, had been imposed in violation of his constitutional right to counsel. The county court ruled that prior Colorado decisions permitting a collateral attack on traffic offense convictions in a prosecution for the felony of driving after judgment prohibited, § 42-2-206, 17 C.R.S. (1983 Supp.), were inapplicable to the misdemeanor offense of driving under suspension and, on that basis, rejected the defendant's challenge to the constitutional validity of the careless driving conviction. At a subsequent trial Gandy was found guilty of driving under suspension and was sentenced to the minimum mandatory term of five days in the county jail.

On September 13, 1980, Kirk Howard Reichenberg was stopped in Boulder County for reckless driving. A check of his driving record indicated that his license had been suspended by the Department of Motor Vehicles on June 18, 1980. The order of suspension had been predicated on the accumulation of eleven points in a one year period for a right-of-way and two speeding violations, all of which resulted in fines only. In the prosecution for driving under suspension, Reichenberg testified that he

had not been represented by counsel on any of the three traffic violations, he had no recollection of ever having been advised of right to counsel on the penalty assessment form or by the court, and, so far as he recalled, he did not waive counsel. The Boulder County Court refused to permit Reichenberg to collaterally challenge the convictions underlying the suspension order. Reichenberg was found guilty of driving under suspension and sentenced to thirty days imprisonment.

Both defendants appealed their convictions to the Boulder District Court. The district court ruled that, because the statutory offense of driving under suspension carried a mandatory jail term and the statutory proscription did not manifest a legislative intent to authorize a conviction regardless of the constitutional invalidity of the prior traffic offense convictions resulting in the suspension order, the collateral challenges to the traffic offense convictions underlying the suspension order should have been entertained and resolved on the merits by the county court. Concluding that both defendants had presented sufficient evidence to meet their burden of establishing a prima facie case for suppression of the traffic offense convictions, the district court vacated the convictions of driving under suspension and remanded the cases to the county court with directions to conduct an evidentiary hearing at which the prosecution would bear the burden of proving the constitutional validity of the underlying traffic offense convictions resulting in the suspension orders. We granted certiorari to consider two issues: (1) whether Colorado decisions permitting collateral attack on uncounseled prior traffic offense convictions in a prosecution for the felony of driving after judgment prohibited should apply also to a prosecution for the misdemeanor offense of driving under suspension; and (2) whether the right to collateral challenge, if available in a prosecution for driving under suspension, extends to convictions entered in accordance with fine-only penalty assessment procedures.

## II.

■ We first address the question whether a defendant in a prosecution for driving under suspension may collaterally challenge uncounseled prior traffic offense convictions underlying the administrative order of suspension. We conclude that collateral challenge is permissible in such a prosecution.

■ It is axiomatic that criminal convictions obtained in violation of an individual's constitutional rights may not be used in a subsequent criminal proceeding to establish guilt or to enhance punishment. *E.g., United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Thus, in *People v. Roybal (Roybal I),* 618 P.2d 1121 (Colo. 1980), we held that uncounseled traffic offense convictions were subject to collateral attack in a subsequent criminal prosecution for the felony of driving after judgment prohibited. Our holding was based on two considerations: first, in the absence of a clear expression of legislative intent to permit the use of prior uncounseled traffic offense convictions in a prosecution for driving after judgment prohibited, the rule requiring a criminal statute to be construed in favor of the accused militated against

foreclosing a defendant from making a collateral challenge to those prior convictions; and second, a conviction obtained in violation of the right to counsel "is not sufficiently reliable to support the severe sanction of deprivation of liberty." *Roybal I,* 618 P.2d at 1126. We have consistently adhered to our decision in *Roybal I* in other cases involving the felony of driving after judgment prohibited. *People v. Shaver,* 630 P.2d 600 (Colo.1981); *People v. DeLeon,* 625 P.2d 1010 (Colo.1981); *People v. Hampton,* 619 P.2d 48 (Colo.1980); *People v. Roybal (Roybal II),* 617 P.2d 800 (1980).

We are satisfied that our holding in *Roybal I,* although formulated with respect to a felony prosecution, applies with equal vigor to a prosecution for the misdemeanor of driving under suspension. Nowhere in section 42–2–130, 17 C.R.S. (1973 and 1983 Supp.), which defines and sets the penalty for driving under suspension, is there any expression of legislative intent to authorize the use of uncounseled traffic offense convictions in a prosecution for that crime.[1] Moreover, the same concern expressed in *Roybal I* about the suspect reliability of uncounseled traffic offense convictions is equally present whether the prosecution be for driving after judgment prohibited or driving under suspension.

1. In addition to this legislative silence in section 42–2–130 on the use of uncounseled traffic offense convictions in a driving under suspension prosecution, the legislature in 1982 enacted section 42–4–1505.3(5), 17 C.R.S. (1983 Supp.), which expressly authorizes collateral challenges to Class A and B traffic infractions within six months after the date of entry of judgment and provides as follows:

"(5)(a) Except as otherwise provided in paragraph (b) of this subsection (5), no person against whom a judgment has been entered for a traffic infraction as defined in section 42–4–1501(2)(a) shall collaterally attack the validity of that judgment unless such attack is commenced within six months after the date of entry of the judgment.

(b) In recognition of the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders, the only exceptions to the time limitations specified in paragraph (a) of this subsection (5) shall be:

(I) A case in which the court entering judgment did not have jurisdiction over the subject matter of the alleged infraction;

(II) A case in which the court entering judgment did not have jurisdiction over the person of the violator; or

(III) Where the court hearing the collateral attack finds by a preponderance of the evidence that the failure to seek relief within the applicable time period was caused by an adjudication of incompetence or by commitment of the violator to an institution for treatment as a mentally ill person."

Because the effective date of section 42–4–1505.3(5) was January 1, 1983, it has no effect on the issues raised here. This statute was amended on February 6, 1984, subsequent to our decision in *People v. Germany,* 674 P.2d 345 (Colo.1983), by the addition of the following subsection (5)(b)(IV):

"Where the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect."

The right to collaterally challenge uncounseled traffic offense convictions should not turn on whether the defendant is charged in a pending criminal prosecution with a felony or a misdemeanor. What is significant in our view is that the offense of driving under suspension is a crime carrying a mandatory minimum of five days in jail and a maximum penalty of six months imprisonment. To permit the defendants in this case to collaterally challenge the constitutional validity of traffic offense convictions underlying an order of suspension is nothing more than an adherence to the basic principles on which our holding in *Roybal I* was predicated.

### III.

 We consider next whether traffic offense convictions resulting in fines only under the penalty assessment procedure of section 42–4–1501(4), 17 C.R.S. (1973), are nonetheless subject to collateral challenge in a subsequent prosecution for driving under suspension. We conclude that they are.

Despite the fine-only character of the penalty scheme for the traffic offenses included within the penalty assessment procedure, these offenses were nonetheless criminal rather than civil in character under the then existing statutory scheme.[2] *See City of Greenwood Village v. Fleming*, 643 P.2d 511, 517–18 (Colo.1982); *Olinyk v. People*, 642 P.2d 490 (Colo.1982). In *Hampton*, 619 P.2d 48, 52 (Colo.1980), we held that a traffic offense conviction entered as a result of an acknowledgement of guilt and the payment of a fine at the

violations bureau could not be used as proof of habitual traffic offender status in a prosecution for driving after judgment prohibited "unless the person who elects the fine-payment procedures is informed that he has a right to counsel and unless he waives that right." Our holding was predicated on the principle that a constitutionally infirm traffic offense conviction, even though punishable by a fine only, was not sufficiently reliable to support a conviction that could directly result in a loss of liberty to the accused. This same rationale is equally applicable to a prosecution for driving under suspension which involves a mandatory jail term.

The judgments are affirmed.

NEIGHBORS, J., does not participate.

---

2. We note that, effective January 1, 1983, after the events in question in these cases, section 42–4–1501(1) was amended by the legislature so as to decriminalize certain traffic violations:

"It is a traffic infraction for any person to violate any of the provisions of articles 1 to 4 of this title unless such violation is, by articles 1 to 4 of this title or by any other law of this state, declared to be a felony, misdemeanor, or misdemeanor traffic offense. Such a traffic infraction shall constitute a civil matter."

"Traffic infractions" are civil in nature and are subject to penalties in the nature of a fine only. § 42–4–1501(2)(a)(I). Those traffic violations which are specifically declared to be misde-

meanor traffic offenses are criminal in nature and conviction thereof results in a fine or a jail term or both. § 42–4–1501(2)(a)(II). Had Gandy been convicted of careless driving (§ 42–4–1204, 17 C.R.S. (1983 Supp.)) under the amended statutory scheme, his challenged conviction, as a misdemeanor traffic offense, would nonetheless have remained criminal in character. It is unclear from the record whether Reichenberg's traffic offense convictions would be civil or criminal under the new statutory scheme. It is not necessary to resolve that question in this case, however, since all of the challenged convictions were criminal in character when imposed.